UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIRANDA L. DAY,

      Plaintiff,

v.                                              Case No. 8:10-CV-2463-T-33TGW

PERSELS & ASSOCIATES,
LLC, et al.,

      Defendants.

_____

## O R D E R

THIS CAUSE came on to be heard upon the Motion to Compel

Arbitration and Stay Action by defendants Ascend One Corporation, 3C

Incorporated, CareOne, and Bernaldo Dancel (Doc. 25), and the plaintiff's

response thereto (Doc. 50). The parties have consented in this case to the

exercise of jurisdiction by a United States Magistrate Judge for the purpose

of ruling on the motion (Doc. 58).

The defendants' request to compel arbitration and stay the action

was incorporated into their motion to dismiss (Doc. 25). A hearing was held,

and the motion to dismiss was denied as moot after the plaintiff agreed to file

an amended complaint within thirty days (Doc. 67). However, the parties

acknowledged that the request to compel arbitration by defendants Ascend One Corporation, 3C Incorporated, CareOne, and Bernaldo Dancel is a distinct issue that is appropriate for disposition (id.). For the following reasons, the motion will be granted.

I.

The plaintiff alleges that she enrolled in a credit counseling service program offered by defendant 3C Incorporated, doing business as CareOne, in an effort to reduce her debt balances and improve her credit (Doc. 1, ¶¶34, 36).[1] However, although the plaintiff paid $1,274.34, the defendants disbursed no payments to her creditors and made no attempt to negotiate with her creditors, contrary to the terms of the contracts (id., ¶¶51, 66, 67). Subsequently, the plaintiff filed a voluntary petition for bankruptcy under Chapter 13 of Title 11 of the United States Code (id., ¶69). The plaintiff claims that the defendants "operate sham organizations designed to lure vulnerable victims into handing over what little money they have while

---

[1]CareOne, formally known as Freedom Point, is a debt management business and the subsidiary of parent company, defendant Ascend One (Doc. 1, ¶13). Defendant Bernaldo J. Dancel is the founder and Chief Executive Officer of the related Ascend One entities (Doc. 1, ¶¶13-15).

Defendants are not obligated to perform any services whatsoever for the funds" (id., ¶76).[2]

Filed as a class action, the plaintiff alleges, in addition to state law claims, that the defendants committed violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), §501.201, et seq., Fla. Stat., and the Credit Repair Organization Act ("CROA"), 15 U.S.C. 1679b.   The defendants move to compel the plaintiff to arbitrate her claims individually because the written contract contained a binding arbitration clause which included a restriction against class actions.

## II.

The defendants move to stay the action and compel the plaintiff to arbitrate her individual claims against them pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. 1, et seq. (Doc. 25, pp. 18-22).  On the basis of an arbitration provision contained in the Client Agreement, the defendants contend that the parties mutually agreed to arbitrate any dispute arising out of the contractual relationship.  Such a showing is essential because "[t]he FAA reflects the fundamental principle that arbitration is a

---

[2]For purposes of this Order, the reference to "defendants" refers only to defendants CareOne, its parent (Ascend One), its affiliate (3C Inc.), and its officer (Dancel).

matter of contract." Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772,

2776 (2010)(citation and quotation omitted).

> In relevant part, the FAA provides (9 U.S.C. 2):

> "A written provision in ... a contract evidencing a
> transaction involving commerce to settle by
> arbitration a controversy thereafter arising out of
> such contract ... shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law
> or in equity for the revocation of any contract."

The Supreme Court has recently reiterated that this provision displays a

"liberal federal policy favoring arbitration." AT&T Mobility LLC v.

Concepcion, ___ S.Ct. ___, 2011 WL 1561956 at *5 (2011) (quoting Moses

H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

"The overarching purpose of the FAA, evident in the text of §§2, 3, and 4, is

to ensure the enforcement of arbitration agreements according to their terms

so as to facilitate streamlined proceedings." Id. at *8.

> However, under the saving clause of §2, an arbitration agreement

may be invalidated by contract defenses such as fraud, duress, or

unconscionability. Rent-A-Center, West, Inc. v. Jackson, supra, 130 S.Ct. at

2776. The saving clause, on the other hand, does not authorize the

invalidation of agreements to arbitrate "by defenses that apply only to

-4-

arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." <u>AT&T Mobility, LLC</u> v. <u>Concepcion</u>, <u>supra</u>, at *5. Thus, "[a]lthough §2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." <u>Id</u>. at *7.

### III.

The plaintiff challenges the enforcement of the arbitration provision based on three contentions: (1) she never entered into an arbitration agreement; (2) the arbitration clause was rejected when she cancelled the entire contract within sixty days; and (3) the arbitration agreement was contrary to public policy, substantively unconscionable, and procedurally unconscionable (Doc. 50, pp. 19-27). None of these contentions supports nonenforcement of the arbitration agreement.

A. <u>Assent to the Agreement</u>.

As her first argument, the plaintiff asserts that she never signed the Agreement (Doc. 50, p. 20). "[I]t is well established that parties cannot be forced to submit to arbitration if they have not agreed to do so." <u>Magnolia Capital Advisors, Inc.</u> v. <u>Bear Stearns & Co.</u>, 272 Fed. Appx. 782, 785 (11th

Cir. 2008)(unpub. dec.)(citation and quotations omitted).  If there is a dispute whether there is an agreement to arbitrate, the court, rather than an arbitrator, must decide whether there is an agreement.  Id.

The defendants have filed paper copies of exhibits showing the electronic communications that were exchanged between the plaintiff and CareOne in connection with her enrollment in CareOne's program (Doc. 25-1).   The first page is a summary page listing three documents being transmitted to the plaintiff: (1) the Client Agreement, (2) the Repayment Schedule, and (3) the Easy Pay Authorization (id., p. 4).  The next page is the Easy Pay Authorization, which contains checking account information and an instruction to sign it and fax it to CareOne (id., p. 5[3]).  While there is a place for the plaintiff to sign, there is no signature on that document (id.).  The next three pages constitute the Client Agreement, which includes the arbitration provision (id., pp. 6-8).  Then, there is a document referred to as "E-Signature Disclosure and Consent" (id., p. 9).  That describes what is involved in applying for the program online (id.).  The document states that, by clicking "I consent" below, that is the plaintiff's electronic signature and that the

---

[3]The page number refers to the page number assigned by the CM/ECF system at the top of the document.

plaintiff agrees, among other things, that the electronic signature has the same effect as the plaintiff's written signature (id.). The exhibits then contain a picture of the electronic screen which explains the steps for providing the plaintiff's electronic signature by clicking "I consent" (id., p. 11). The last page contains CareOne's contact notes showing that the plaintiff had agreed to the Client Agreement and the Digital Signature Agreement, among other things (id., p. 12).

The defendants have shown, by affidavit and attached exhibits, that the plaintiff signed the Agreement electronically via CareOne's website (id.). The website gave the warning that clicking two boxes would affirm the Agreement and that CareOne "will immediately start the process of contacting your creditors" (id., p. 11). The record shows further that on November 12, 2007, the plaintiff followed the prompts and clicked the appropriate boxes to digitally sign the Repayment Schedule, Privacy Agreement, Client Agreement, and Digital Signature Agreement (id., p. 12).

In contending she did not agree to the arbitration provision, which was part of the Client Agreement, the plaintiff relies on the Enrollment Summary which stated that the agreement is given effect only after she signs

and faxes the form back to CareOne (Doc. 50, p. 20). Thus, the plaintiff asserts that she did not enter into the agreement containing the arbitration provision because "she did not sign and return the Enrollment Summary Page" (id.). However, the fact that the plaintiff did not physically sign the form and fax it to CareOne does not somehow cancel out her electronic signature.

Significantly, the form that the plaintiff did not sign required her to agree to both the Client Agreement and to automatic withdrawals from her bank account (Doc. 25-1, pp. 4-5). There is no indication in the record that the plaintiff ever authorized CareOne to make automatic withdrawals since such withdrawals were not included in the matters that the plaintiff agreed to electronically. Thus, it is understandable that the plaintiff did not sign the form agreeing to both the Client Agreement and the Easy Pay Authorization, but did sign electronically the Client Agreement without the Easy Pay Authorization.

In all events, it really does not matter why the plaintiff did not physically sign the Enrollment Summary and fax it back (maybe she did not have access to a fax machine). The plaintiff undoubtedly accepted the Client

-8-

Agreement electronically.  The plaintiff has made no attempt to show that such an acceptance is ineffective. See U.S. Distributors, Inc. v. Block, 2009 WL 3295099 at *5 (S.D. Fla. 2009).  Accordingly, the plaintiff's contention that she did not accept the Client Agreement with the arbitration provision is rejected.  See Brueggemann v. NCOA Select, Inc., 2009 WL 1873651 (S.D. Fla. 2009).[4]

### B.  Effect of Cancellation.

The plaintiff, in little over a month, cancelled the contract and received a refund of her single payment to CareOne (Doc. 25-1, p. 2).  She argues that the cancellation revoked the entire contract and "nullif[ied] the arbitration provision" (Doc. 50, pp. 21-22).  However, the Agreement expressly stated that "[t]he Arbitration Agreement and the No Liability paragraphs of this agreement continue to apply after this agreement ends" (Doc. 25-1, p. 8).

---

[4]The plaintiff makes a conclusory argument that the Client Agreement fails to satisfy the Statute of Frauds because it was not signed and could not be completed within one year (Doc. 50, p. 21).  The plaintiff has failed to develop this argument and has not cited any authority in support of it.  For example, there is no discussion concerning whether the electronic signature satisfies the Statute of Frauds.  See U.S. Distributors, Inc. v. Block, supra.  Moreover, the contention was not mentioned at the hearing.  Consequently, it is deemed abandoned.

Moreover, the Supreme Court has said that an arbitration clause survives the termination of the contract unless the agreement to arbitrate is "negated expressly or by clear implication." Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO, 430 U.S. 243, 255 (1977). Here, the agreement's arbitration provision set forth a procedure for the plaintiff to reject the provision. Thus, if the plaintiff wished to opt out of the arbitration requirement, the provision specifically instructed her to send a rejection notice, with her name, address, telephone number, and agreement number, to CareOne's address (and no other location) within 60 days after the date of the Client Agreement (Doc. 25-1, p. 8). The agreement stated that sending a rejection notice "is the only method [the plaintiff] can use to reject this arbitration agreement" (id.). The plaintiff has not presented any evidence that she complied with the provision's specific requirement that she send a rejection notice to CareOne. Therefore, as the defendants correctly asserted at the hearing, the arbitration provision survived the end of the Client Agreement.

C. <u>Other defenses</u>.

The plaintiff raises three other challenges to the arbitration provision. Thus, the plaintiff seeks to void the arbitration provision as contrary to public policy because the agreement's limitation on punitive damages defeats the remedial purpose of applicable statutes (Doc. 50, pp. 22-23). Second, the plaintiff asserts that the arbitration provision's restriction on a class action is substantively unconscionable (<u>id</u>., p. 24). Finally, the plaintiff contends that the Agreement is procedurally unconscionable as an adhesion contract that she could not understand (<u>id</u>., p. 25).

1. <u>Void As Against Public Policy</u>.

The plaintiff asserts that enforcement of the contract will violate public policy because the arbitration provision precludes the arbitrator from awarding punitive damages which are available to her under FDUPTA, the CROA, and common law fraud claims (<u>id</u>., p. 22). The two cases cited by the plaintiff do not directly support this proposition. One was based on unconscionability, which is distinct contention. <u>Hialeah Automotive, LLC</u> v. <u>Basulto</u>, 22 So.3d 586 (Fla. App. 2009). In the other, the court severed

the damages limitation and enforced the remainder pursuant to a severability provision, which is also present in this case. <u>Alterra Healthcare Corp.</u> v. <u>Estate of Linton ex rel. Graham</u>, 953 So.2d 574 (Fla. App. 2007).

Regardless of what Florida law provides with respect to a damage limitation provision, the Supreme Court's decision in <u>Buckeye Check Cashing, Inc.</u> v. <u>Cardegna</u>, 546 U.S. 440 (2006), establishes that the determination of that issue is for the arbitrator, and not the court. In <u>Buckeye Check Cashing</u>, the plaintiffs had entered into deferred-payment transactions that they subsequently challenged as charging usurious interest. The defendant sought to compel arbitration pursuant to arbitration provisions in the transaction agreements. The plaintiffs objected to arbitration, contending that the agreements violated pubic policy and were invalid. The Florida Supreme Court sustained that objection because the agreements violated state law. However, the United States Supreme Court reversed. The Supreme Court held that, as a matter of substantive federal arbitration law under the FAA, "an arbitration provision is severable from the remainder of the contract" and that "unless the challenge is to the arbitration clause

itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445-46.

In this case, the arbitration clause says nothing about damages. Rather, the provision limiting punitive damages is found not in the arbitration provision, but under the separate provision entitled "**No liability**" (Doc. 25-1, p. 7)(emphasis in original). Under these circumstances, the plaintiff is therefore requesting the court to rule on matters outside the arbitration clause. However, as indicated, the Supreme Court has held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Buckeye Check Cashing, Inc. v. Cardegna, supra, 546 U.S. at 449. Consequently, the issue of the damage limitation provision does not warrant the denial of the motion to compel arbitration.

2.  Substantive Unconscionability.

The plaintiff's second challenge to the contract is based upon the arbitration provision's waiver of class arbitration, which she contends is substantively unconscionable (Doc. 50, pp. 24-25). In the arbitration provision, the class action prohibition states (Doc. 25-1, p. 7):

> [T]he arbitrator may only resolve the claims, disputes, or controversies between [the plaintiff] and [CareOne]. The arbitration won't be conducted on a class-wide basis or be consolidated with claims or demands of other persons. [The plaintiff] agree[s] not to participate in a representative capacity or as a member of any class of claimants, pertaining to any Claim.

The plaintiff's contention that this limitation invalidates the arbitration provision is defeated by the Supreme Court's decision on April 27, 2011, in AT&T Mobility, LLC v. Concepcion, supra.

In AT&T Mobility, the Supreme Court reversed the Ninth Circuit's ruling under California law that an arbitration provision was unconscionable because it disallowed classwide proceedings. The Supreme Court held that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 2011 WL 1561956 at *8. Consequently, the state-law rule was pre-empted by the FAA.

The Supreme Court's decision was based essentially on the inconsistency of class-wide arbitration with bilateral arbitration as contemplated by the FAA. That consideration warrants the same result here. Significantly, the parties were afforded an opportunity to comment on AT&T

Mobility (Doc. 75), and the plaintiff with commendable candor acknowledges that the decision defeats her argument on this point (Doc. 80, p. 5).[5]

It is recognized that, in Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1144 (11th Cir. 2010), the Eleventh Circuit certified to the Florida Supreme Court questions whether a class action waiver in an arbitration agreement was, under Florida law, procedurally unconscionable, substantively unconscionable, or void for any other reason. The Florida Supreme Court's answer will have no determinative effect here because, even if it says that the class action waivers are invalid, that answer would be preempted by the FAA under AT&T Mobility.

Therefore, the plaintiff's argument that the arbitration provision is substantively unconscionable due to the class action waiver is unavailing. This conclusion could potentially render immaterial the plaintiff's claim of procedural unconscionability since, as the Eleventh Circuit has pointed out, there is authority in Florida that, if either substantiative or procedural unconscionability is not shown, no further analysis is required. Pendergast

---

[5]Both parties in their memoranda have improperly made arguments beyond commenting on AT&T Mobility, which was all that was authorized. Those additional arguments will be deemed stricken.

v. Sprint Nextel Corp., supra, 592 F.3d at 1134. However, the Eleventh Circuit has also certified to the Florida Supreme Court the following question: "Must Florida courts evaluate both procedural and substantive unconscionability simultaneously in a balancing or sliding scale approach, or may courts consider either procedural or substantive unconscionability independently and conclude their analysis if either one is lacking?" Id. at 1143. In view of the possibility that the Florida Supreme Court may say that a failure to show one of the factors is not dispositive, it is appropriate to evaluate the plaintiff's contention of procedural unconscionability.

### 3. Procedural Unconscionability.

The plaintiff asserts that the arbitration clause is procedurally unconscionable because (1) the arbitration provision "does not even explain what 'arbitration' is, what is involved in the process, or what it could mean for Plaintiff"; (2) the provision "uses legal jargon such as 'counterclaims,' 'intentional torts,' and 'common law and equity'" that "are not understandable to Plaintiff or the ordinary person who has not had legal training"; and (3) the document was an adhesion contract and she had no

opportunity to negotiate its terms (Doc. 50, p. 26). These arguments are meritless.

Under Florida law, to determine whether a contract is procedurally unconscionable, courts must look to: "(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract." Pendergast v. Sprint Nextel Corp., supra, 592 F.3d at 1135.

The plaintiff contends that the arbitration agreement's legal jargon is not comprehensible to an ordinary person and therefore is procedurally unconscionable (Doc. 50, p. 26). She supports that claim with an affidavit stating, "[i]n reviewing the Client Agreement (Doc. 25, Ex. 1-A), I did not understand the language regarding arbitration. I have had no legal training and therefore am not familiar with legal jargon such as 'counterclaims,' 'intentional torts,' and 'common law and equity.' The

arbitration language is not clear to me" (Doc. 50-2, p. 1). This contention is unpersuasive.

Wholly disregarding the fact that the plaintiff does not state that she carefully read the entire arbitration provision and did not provide her educational and her employment background, the assertion that she "did not understand the language regarding arbitration" and that "[t]he arbitration language is not clear to me" is simply too vague and conclusory. The arbitration provision consisted of six paragraphs that took up about one page of a two and one-half page agreement (Doc. 25-1, p. 7). The provision explains, among other things, that any claim or dispute must be resolved by binding arbitration; that the arbitrator will only resolve claims or disputes between the plaintiff and the company and its representatives; and that "[t]he arbitrator's findings, reasoning, decision, and award must be in writing and must be based upon and consistent with the law of the jurisdiction that applies to the agreement," which is the jurisdiction where the plaintiff lives (id.). These details sufficiently inform the plaintiff of the nature of arbitration. Consequently, it is not good enough to simply say in general that the language was not clear and she did not understand it.

-18-

The only specific mention of language she was not familiar with were terms such as "counterclaims," "intentional torts," and "common law and equity." These terms, however, were contained in a parenthetical expression that simply gave examples of "all kinds of claims" that were subject to arbitration. Thus, the arbitration provision expressly told the plaintiff that "all kinds of claims" are subject to arbitration, even if it did not define each type of claim (which, if done, would have produced a bewildering explanation). That statement was clear enough.

Furthermore, the plaintiff had ample opportunity to read the document and get advice on its contents. Because the contract was delivered via email, the plaintiff could review the document at her leisure. Significantly, the arbitration provision contained contact information for the American Arbitration Association ("AAA"), including a website, if the plaintiff wished to obtain rules and forms. The plaintiff in her affidavit recounts at length the electronic research she conducted on the defendants and their activities (Doc. 50-2, pp. 2-4). In light of that capability, the plaintiff obviously could have obtained information about arbitration from the AAA if she had wanted to.

Moreover, the plaintiff's claim of procedural unconscionability is not meaningfully enhanced by characterizing the Client Agreement as an adhesion contract. In the first place, Justice Scalia, writing for the majority in AT&T Mobility, was unimpressed by the fact that the agreement in that case was an adhesion contract, stating that "the times in which consumer contracts were anything other than adhesive are long past." 2011 WL 1561956 at *9. More importantly, the arbitration provision was not a "take-it-or-leave-it" situation, since it provided that the plaintiff could reject the provision by sending a rejection notice to CareOne (Doc. 25-1, p. 8). And the Client Agreement itself was not particularly binding since the plaintiff was able to cancel it and get her money back.

Under these circumstances, the arbitration provision was not procedurally unconscionable. In light of this conclusion, and the determination that the provision is not substantively unconscionable, the resolution of the certified questions in Pendergast v. Sprint Nextel Corp. will make no difference in the decision here.

In sum, the various reasons asserted by the plaintiff do not support a conclusion that the arbitration provision in the Client Agreement

is invalid or otherwise unenforceable.  Therefore, the motion to compel arbitration will be granted.

IV.

The defendants have requested a stay under 9 U.S.C. 3, which provides for a stay "upon any issue referable to arbitration under an agreement" upon the court being satisfied that the issue is referable to arbitration. Accordingly, since I am satisfied that arbitration is warranted, the request will be granted as to defendants Ascend One Corporation, 3C Incorporated, and Bernaldo Dancel.

The issue is not entirely clear with respect to CareOne.  That defendant is sued based under two agreements: the Client Agreement and the Retainer Agreement.  The former had an arbitration provision and the latter did not. Therefore, absent some additional showing, the stay as to CareOne will only be with respect to discovery and proceedings involving the Client Agreement.

It is, therefore, upon consideration

ORDERED:

That the Motion to Compel Arbitration and Stay Action by defendants Ascend One Corporation, 3C Incorporated, CareOne, and Bernaldo Dancel (Doc. 25) be, and the same is hereby, **GRANTED,** and the plaintiff will be compelled to arbitration and the action stayed as to Ascend One Corporation, 3C Incorporated, CareOne, and Bernaldo Dancel with respect to the Client Agreement.

DONE and ORDERED at Tampa, Florida, this 9 day of May, 2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE