UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIRANDA L. DAY,
for herself and all persons
similarly situated,

        Plaintiff,

v.                             CASE No. 8:10-CV-2463-T-TGW

PERSELS & ASSOCIATES,
LLC, et al.,

        Defendants.
_____:

## O R D E R

In this class action it is alleged that the defendants violated the

Credit Repair Organization Act, 15 U.S.C. 1679, et seq., as well as Florida

law.  The named plaintiff and the defendants seek approval of a settlement

of this lawsuit, the terms of which include injunctive relief, a *cy pres* award

of $100,000, an incentive payment of $5,000 to the representative plaintiff,

and payment of an attorneys' fee up to $300,000.  After a hearing on this

matter, it is clear that the proposed settlement is not the product of fraud or

collusion, and that it is a fair, reasonable, and adequate resolution under the

circumstances of this case.  Therefore, the parties' motions to approve the settlement (Docs. 144, 147, 150) will be granted.

I.

The representative plaintiff, Miranda L. Day ("Day"), entered into an agreement with Ruther & Associates, LLC, and CareOne Services, Inc., for "litigation representation and debt settlement services to improve [her] credit through reducing her debts to a level she could timely pay as agreed, and the option of additional credit repair services" (Doc. 98, p. 16). In accordance with this agreement, Day paid $1,274.34 to the defendants (id., p. 21).  Day alleged, however, that the defendants neither disbursed funds to her creditors nor made any attempt to negotiate with her creditors (id.).  She subsequently filed a voluntary petition for bankruptcy pursuant to Chapter 13 of Title 11 of the United States Code (id., p. 28).

On November 4, 2010, Day brought this class action lawsuit against 3C Incorporated, d/b/a CareOne Credit Counseling; Freedom Point; Ascend One Corporation; and Bernaldo Dancel (collectively "CareOne defendants"); and Persels & Associates, LLC; Ruther & Associates, LLC; Jimmy B. Persels; Neil J. Ruther; and Robyn R. Freedman (collectively "law

firm defendants") (Doc. 1).[1]   In addition to state common law claims, Day alleged that the defendants committed violations of the Florida Deceptive and Unfair Trade Practices Act, §501.201, et seq., Fla. Stat., and the Credit Repair Organization Act ("CROA"), 15 U.S.C. 1679b.

In response to the complaint, all of the defendants moved to dismiss, and the CareOne defendants sought to compel arbitration (Docs. 25, 39). The district judge referred these motions to me for a report and recommendation (Doc. 52), and the parties subsequently filed a Consent to Exercise Jurisdiction by a United States Magistrate Judge for disposition of these motions (Doc. 58). The parties later consented to have me preside over all proceedings in this case (Doc. 90).

At a hearing on the motions to dismiss, which was held before me on April 6, 2011, Day requested leave to file an amended complaint (Doc. 67). I therefore denied the motions to dismiss as moot, and noted that I would take the CareOne defendants' motion to compel arbitration under advisement

---

[1]Ascend One is the corporate parent of CareOne and FreedomPoint; Bernaldo Dancel is the founder of all three of these companies (Doc. 1, pp. 4-5). Jimmy B. Persels, Neil J. Ruther, and Robyn R. Freedman are attorneys (id., pp. 5-6). Jimmy B. Persels has retired and is no longer associated with Persels & Associates, LLC (Doc. 146, p. 2). Ruther is the managing member of Persels & Associates, LLC, which has succeeded Ruther & Associates, LLC (id.).

(id.). I subsequently granted the motion to compel and ordered arbitration (Doc. 82). However, as to CareOne Services, Inc., my Order indicated that "absent some additional showing, the stay [due to arbitration would] only be with respect to discovery and proceedings involving the Client Agreement" (Doc. 82, p. 21). Thereafter, CareOne moved to "alter or amend, and/or seek relief from, that portion of the Court's Order dated May 9, 2011, denying CareOne's motion to compel arbitration with respect to those of Plaintiff's claims against CareOne that are based on the Retainer Agreement" (Doc. 95).

On June 10, 2011, Day filed an amended complaint against CareOne Services, Inc.; Persels & Associates, LLC; Ruther & Associates, LLC; Neil J. Ruther; Jimmy B. Persels; Robyn R. Freedman; and Legal Advice Line, LLC (Doc. 98).[2] The amended complaint alleged violations of the CROA, legal malpractice, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, negligent supervision, and negligence. Thereafter, and prior to any ruling on CareOne's motion to alter or amend, the parties notified the court that they had reached an agreement in principle

---

[2]The amended complaint states that Legal Advice Line, LLC, "was co-counsel with Ruther & Associates and Persels & Associates" (Doc. 98, p. 6).

(Doc. 103). I therefore entered an Order staying the case for sixty days (Doc. 104).

Day filed a Motion for Preliminary Approval of the Settlement Agreement in September 2011, seeking: (1) conditional certification of the Class; (2) the appointment of Plaintiff's counsel as counsel for the Class; (3) preliminary approval of the terms of the proposed Settlement Agreement; (4) approval of the proposed Notice to the Class and the plan for dissemination of the Notice to the Class; and (5) the setting of a Fairness Hearing (Doc. 110). Upon review of the papers, I found that the proposed settlement appeared fair, adequate, and reasonable, and that the Notice Plan was an appropriate means of providing notice to the Class members (Doc. 112, pp. 1-2). Thus, I issued an Order granting Day's motion for preliminary approval of the class action settlement (Doc. 112), and I denied CareOne's motion to alter or amend as moot (Doc. 113).

The proposed settlement provides for injunctive relief against the law firm defendants, a $5,000 incentive payment to Day as the Class representative, and a *cy pres* award of $100,000 ($50,000 each to the Institute for Financial Literacy and the Credit Abuse Resistence Education ("CARE")

-5-

Program) (Doc. 144, pp. 6-8; Doc. 147, pp. 4-5; Doc. 150, pp. 4-5; Doc. 150-3). With respect to injunctive relief, the settlement agreement provides that the law firm defendants must: (1) establish procedures to assure that clients can communicate with an attorney within a reasonable amount of time; (2) modify the disclosures in their retainer agreement; and (3) eliminate the practice of collecting legal fees from consumers for debt settlement services prior to negotiations with the consumers' creditors (Doc. 144, pp. 6-8; Doc. 150, pp. 4-5). Additionally, the agreement states that the defendants will pay the settlement administration costs and Class counsel's fees up to $300,000 (id.).[3] These terms are memorialized in the parties' motions to approve the settlement agreement (Docs. 144, 147, 150).

Over 125,000 Class members were identified in this case (Doc. 144, p. 4; Doc. 150, p. 6). In accordance with the approved Notice Plan, the Settlement Administrator, Rust Consulting, Inc., "emailed the Notice to 101,698 Class Members and mailed by first class mail the Notice to another

---

[3]The terms of the original settlement agreement, as approved by my Order (Doc. 112), provided for a *cy pres* payment of $100,000 to the American Bar Foundation (Doc. 147, p. 4 n.3). However, the parties amended this provision in light of opposition received from objector Raymond Gunn (id.). The parties also modified the release provisions of the agreement (Doc. 150, pp.17-18).

23,313 Class members identified in the Class List" (Doc. 150-8, p. 3). Further, "[a]dditional attempts were made to mail the Notice to those whose emailed or mailed Notice could not be delivered, with the result that the Notice was ultimately sent to approximately 98.4% of Class members" (Doc. 150, p. 6). The Notice was also sent to the Attorney General of the United States and the Attorney General of every state except Washington (Doc. 144, p. 4; Doc. 50-8, p. 4).[4]   The cost of the settlement administration was $50,918.70 as of January 19, 2012 (Doc. 150-8, p. 4).

The Notice advised the recipients that they could opt out of the Class, so that they would not be bound by the terms of the settlement and would not be precluded from filing or prosecuting any claim that the individual had against the defendants (Doc. 112, pp. 4-5). In response to the Notice, the Settlement Administrator received 325 Class member exclusion requests, accounting for 0.2% of the Class, by the opt-out deadline of December 15, 2011 (Doc. 150-8, p. 4; Doc. 150, p. 6). Only twenty untimely opt-out requests were received (Doc. 150-8, p. 4). Five Class members,

---

[4]A separate class action, Bronzich v. Persels & Associates, LLC, et al., No. CV-10-00364-EFS. is pending in the United States District Court for the Eastern District of Washington.

Charity Anderson, Michael Psota, Michael Corini, Raymond Gunn, and Koni

Lee, filed objections to the settlement with this court (Docs. 123, 126, 131,

133, 134). Further, as Class counsel notes (Doc. 150, p. 6 n.1):

> Two additional letters that were framed as objections, from Gladys Mary Trask, Doc. 118, and Michael and Glenda Sweeney, Doc. 124, did not take issue with the Settlement, but with the fact that the Defendants had been sued, apparently because the letter writers had positive experience[s] in the dealings with the Defendants. Four of the exclusion requests filed with the Court, Doc. 116, Doc. 117, Doc. 119, Doc. 120, appear to share the same basis.

Class representative Day and the defendants now move for final

approval of the settlement agreement (Docs. 144, 147, 150). These parties

argue that the settlement is fair, reasonable, and adequate in accordance with

Fed.R.Civ.P. 23(e), and that it satisfies the Eleventh Circuit's class action

settlement factors (Docs. 144, 150). Day also asserts that the Class was

properly certified, and the Notice to the Class members was adequate and

effective (Doc. 150, pp. 19-21). Finally, Day moves for an Order granting

the award of an attorneys' fee for Class counsel (id., pp. 21-24).

Class members Raymond Gunn and Koni Lee filed responses to

the motions for approval (Docs. 149, 153, 154). The primary focus of these

objections was on the lack of a monetary distribution to the Class and the appropriateness of a *cy pres* distribution in this case.

In addition, this court also received letters of opposition from non-parties. On behalf of the Attorney General of Connecticut, Florida, Maine, and West Virginia, the Attorney General of New York asserted that the settlement was not reasonable because (1) it requires Class members to release potentially valuable claims while receiving no benefit in return; (2) the relief provided does not address the harm suffered by the Class members; and (3) a *cy pres* award is not appropriate in this case (Doc. 152). Further, in a letter dated January 27, 2012, the Oregon Department of Consumer and Business Services' Division of Finance and Corporate Securities "urge[d] this Court to reject the proposed settlement" on the basis that the settlement is not fair, reasonable, and adequate.

A fairness hearing was held before me on February 2, 2012. Counsel for the Class, the CareOne defendants, the law firm defendants, objector Lee, and objector Gunn participated.

At the hearing, James Felman, one of the lawyers designated as Class counsel, argued that the proposed settlement is fair, adequate, and

reasonable, and is not the product of collusion. Felman noted that, although the settlement is not ideal because it fails to get money back into the hands of the Class members, it holds the defendants accountable for their actions by providing for injunctive relief, a *cy pres* award to two debt organizations, and the payment of the cost of settlement administration and an attorneys' fee. He stated that, despite the objections that the Class members would not receive any money, none of the objectors have proposed a better solution. Felman also explained that the overwhelming majority (98.4%) of the Class members, including the objectors, were provided sufficient notice regarding the proposed settlement and given an opportunity to opt out of the Class. However, only 325 of over 125,000 Class members submitted exclusion requests.

Felman further stated that an important consideration in settling this case is the uncertainty regarding the collectability of a judgment. His investigation revealed that the defendants are facing financial hardship. Thus, if the Class, comprising over 125,000 members, prevailed at trial, there could be a sizeable monetary judgment that may not be collectable. Further, Felman

noted that, should the settlement not be approved, litigation expenses would continue to accrue.

Counsel for the law firm defendants, David Knight, elaborated on the defendants financial issues at the hearing. Knight confirmed that the collectability of a judgment in this case is doubtful. He stated that Persels & Associates, LLC, is experiencing financial difficulties, having suffered net losses for the last two years. Further, Knight explained that Persels & Associates, LLC, owes $14 million pursuant to a settlement agreement in an unrelated case. Knight also informed the court that Persels & Associates, LLC, does not have malpractice insurance to cover any judgment that would potentially be awarded in this case.

In addition, Knight discussed the changes that the law firm defendants have already implemented in their practices. He stated that Persels & Associates, LLC, has adopted a contingency fee procedure, rather than charging clients a fixed fee for debt settlement services. The defendants have also invested significant financial resources into a new computer system which will allow for greater responsiveness to client requests for assistance. Finally, the law firm defendants are modifying their retainer agreements to

-11-

provide pertinent disclosures to clients.  These disclosures will include an estimate of total payments, the amount of legal fees, and the date the client's debts will be satisfied.

Counsel for CareOne Services, Inc., directed the court's attention to its motion to compel arbitration.  After some discussion with the court regarding the status of this motion, CareOne's counsel expressed an intention to seek an interlocutory appeal if the proposed settlement in this case is not approved.  Such an appeal could significantly delay the progress of this case.

Michael Kirkpatrick, counsel for objector Gunn, argued that the court should not grant the motions seeking approval of the proposed settlement agreement.  Kirkpatrick asserted that the settlement is unfair because the Class members, with the exception of representative plaintiff Day, would receive nothing in exchange for releasing their claims against the defendants.  He further argued that the proposed injunctive relief fails to compensate the Class, and by implementing the proposed business practice changes, the law firms are simply complying with federal regulations.

With regard to the reaction to the Notice, Kirkpatrick asserted that the silence of the majority of Class members does not necessarily

constitute their approval of the settlement.  Thus, he argued that the court should focus on the substance rather than the number of objections it received.  Kirkpatrick said that the limited number of responses from state Attorneys General is not indicative of the overall reaction to the settlement. He stated that it is often difficult to get a majority of Attorneys General to respond to such settlement proposals.

Attorney Kirkpatrick also commented on the issue of collectability of a judgment. He asserted that Persels & Associates, LLC, may have a $14 million dollar settlement to pay, but there are other defendants in this case that may be able to satisfy a potential judgment. Thus, Kirkpatrick suggested that a searching inquiry to see if the other defendants can pay would be beneficial. Kirkpatrick indicated that he had not performed such an inquiry, and the burden to do so would likely fall on the settling parties rather than the objectors.

Finally, F. Jerome Tapley, counsel for objector Lee, argued against the approval of the proposed settlement. Tapley iterated Kirkpatrick's concern that the settlement would require the Class members to give up their claims for nothing.  With respect to the opt-out notice, Tapley asserted that

-13-

it is not clear whether the Class members had a reasonable opportunity to make an informed decision about their participation in the Class. Thus, he claimed that the Class members may not have had time to consult with an attorney and investigate the matter before the opt-out deadline.

## II.

Pursuant to Rule 23(e), Fed.R.Civ.P., the court must approve the settlement by a certified class. In order to approve a settlement, the district court must find that it is "fair, adequate, reasonable, and not the product of collusion." <u>Leverso</u> v. <u>SouthTrust Bank of Ala., Nat. Assoc.</u>, 18 F.3d 1527, 1530 (11th Cir. 1994); <u>see also</u> Rule 23(e), Fed.R.Civ.P.  Several factors useful in making this determination are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement is achieved. <u>Sterling</u> v. <u>Stewart</u>, 158 F.3d 1199, 1204 n.6 (11th Cir. 1998); <u>Bennett</u> v. <u>Behring Corp.</u>, 737 F.2d 982, 986 (11th Cir. 1984).

It is noted that there is a "strong judicial policy favoring settlement." Bennett v. Behring Corp., supra, 737 F.2d at 986. Thus, "absent fraud, collusion, or the like, [the trial court] should be hesitant to substitute its own judgment for that of counsel." Canupp v. Liberty Behavioral Healthcare Corp., 447 Fed. Appx. 976, 978 (11th Cir. 2011) (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)). However, a primary concern in this analysis is insuring that the rights of the passive Class members are not jeopardized by the proposed settlement. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).

### III.

An evaluation of the settlement should begin with the "elephant in the room": The Class members receive no money. That is the primary objection raised to the settlement. Notably, the lack of a monetary award to the Class members made me skeptical of the settlement at the outset. However, there are certain factors that persuade me that the settlement as a whole is fair, adequate, and reasonable despite the lack of a monetary payment to the Class members. Those factors are (1) the ability of the Class members to opt out of the settlement agreement; (2) the financial inability of

the defendants to pay a meaningful award, much less to respond to a large judgment; and (3) my complete confidence in the ability and integrity of lead counsel Felman and his co-counsel Katherine Yanes.

A. <u>Important factors supporting approval of the settlement.</u>

The ability to opt out of the settlement agreement adequately countered the lack of an award to the Class members. That option was sufficiently explained to the Class members in a Notice that reached virtually all of the 125,000 members.

The Notice sent to the Class provided, in pertinent part (Doc. 150-8, p. 16):

**9. What am I giving up as part of the Proposed Settlement?**

If you do nothing, you will be part of the Class. That means you cannot sue Defendants over the claims settled in this case. It also means that all of the Court's orders, including the release of claims and dismissal of the lawsuit with prejudice (*see* Question 10), will apply to you and legally bind you.

Your interests as a member of the Class will be represented by the Representative Plaintiff and Class Counsel. You will not be billed for their services. Class Counsel will receive a fee only if the Court approves the Proposed Settlement, and

-16-

the fee award will be set by the Court and paid by Defendants ....

**10. How does the Proposed Settlement affect my rights?**

If the Proposed Settlement is finally approved, the Court will enter a judgment dismissing all claims against Defendants with prejudice.  Under the terms of the Proposed Settlement, you will release Defendants with respect to the claims that were raised or could have been raised in the case.  This means you cannot seek equitable relief or any type of monetary relief against Defendants based on any claim related to or arising out of your retainer agreement with P&A, the services provided pursuant to that agreement, or the Debt Settlement Legal Services provided by Defendants. You will be giving up all such claims, whether or not you know about them ....

The Court's order will apply to you even if you objected or have any other claim, lawsuit, or proceeding pending against any of the Defendants. If you have any questions about the release, you should consult with a lawyer.

The Notice went on to explain the Class members' options for

being excluded from the Class.  Thus, the Notice stated (id., p. 16):

**EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT**

If you want to keep your right to sue Defendants, you must take steps to remove yourself from the

-17-

Proposed Settlement. This is called asking to be
excluded from – or "opting out" of – the Class.

## 11. How do I remove myself from the Proposed Settlement?

If you choose to exclude yourself from the Class,
you will not be bound by any order, judgment or
settlement of the lawsuit, nor will you receive any
of the benefits of this class action. You will retain
and be free to pursue any claims that you may have
on your own behalf.

To exclude yourself from the Proposed Settlement,
you must mail a letter saying that you want to be
excluded from the Class in *Day v. Persels &
Associates, LLC*. You must include your full name,
current mailing address, and telephone number, and
the letter must be signed by you personally. Your
letter requesting exclusion must be mailed or
otherwise delivered to the following address such
that it is **received by December 15, 2011**:

Settlement Administrator
c/o Rust Consulting, Inc.
PO Box 2625
Faribault, MN 55021-9625

Importantly, the Notice was extremely effective in reaching the

Class members. In this case with over 125,000 Class members, the settlement

administrator succeeded in sending the Notice to approximately 98.4% of the

Class (Doc. 150, p. 6). At the hearing, Felman indicated that he had never

seen a class action notice that was as successful as in this case. He further stated that, as a result of the Notice, he had to hire additional personnel to handle inquiries regarding the matter.

Significantly, even with the Notice being successfully provided to the Class, the settlement has received very little opposition. In fact, only 325 Class members, representing 0.2% of the Class, chose to exercise their right to opt-out (id.). In addition, just five Class members objected to the settlement without opting-out.

At the hearing, attorney Kirkpatrick argued that the silence of the remaining Class members should not be construed as their approval of the settlement. On the other hand, there is no reason to construe the silence as disapproving the settlement.

The silence by more than 99% of the Class members signifies at least that the overwhelming majority of the Class members were not upset enough by the actions of the defendants to prompt them to respond to the Notice. Under the circumstances, there is no reason to think they even care about the settlement in this case, much less that they desire to preserve their right to sue the defendants by opting out. Moreover, some of the Class

members likely are sufficiently satisfied by the consequences placed upon the defendants by the injunction to change business practices and the obligation to pay out $405,000.

Further, not every Class member who chose to opt-out did so because of the terms of the settlement. Notably, some Class members actually objected or sought exclusion based on their good experiences with the defendants and their view that the defendants should not have been sued (see, e.g., Docs. 118, 124).

At the hearing, counsel for objector Lee argued that the Class members may not have had the opportunity to make an informed decision about their participation in the Class. Thus, he asserted that the Class members potentially did not have time to consult an attorney or investigate the matter prior to the opt-out deadline. This argument is unpersuasive because the Class members had about 45 days to decide what to do. In all likelihood, any Class member who did not decide to opt-out in that time period would not be motivated enough to sue the defendants.

In short, the ability to opt-out would accommodate any potential Class member who considered the settlement agreement inadequate because

it did not provide for a monetary award to the Class. An individual who opts-out retains the ability to sue the defendants and seek full reimbursement. Significantly, as will be explained, even if the settlement agreement could have provided some monetary award, there is no reasonable possibility that the amount paid would be anywhere near the Class members' claimed losses. Such a recovery could be obtained, if at all, only by an individual lawsuit.

As indicated, the second factor that supports the settlement agreement despite the lack of a monetary award to the Class members is the limited financial resources of the defendants. Persels & Associates, LLC, incurred net financial losses of $2,137,269 in 2010, and $3,720,000 in 2011 (Doc. 155, p. 1). The firm also owes $14 million pursuant to a settlement agreement in an unrelated matter, and this obligation "is secured by all of [the firm's] assets, including accounts receivable" (id., pp. 1-2).

The size of the Class, 125,000 members, renders infeasible the payment of a Class award of any significance. Thus, an award of $10 – which no one would consider satisfactory – would require a payment of $1,250,000, while an award of just $100 would amount to a payment of $12,500,000. No one has come forward with any information suggesting the defendants are

-21-

capable of making the minimal payments to each Class member that would amount to such an enormous outlay.

These circumstances also demonstrate the futility of the plaintiff taking this case to trial since any judgment would be uncollectable. Thus, if each of the Class members were awarded $1,000 – and the average claim appears to be more than that – the judgment would amount to $125 million. It was certainly reasonable for plaintiff's counsel to conclude that pursuing such a worthless judgment did not justify the additional effort and expense.

This conclusion reflects the third factor that convinces me that the settlement agreement should not be rejected because there was no monetary award to the Class members. Lead counsel Felman and co-counsel Yanes are well known to me. They have exceptional legal abilities and the utmost integrity. Consequently, not only am I convinced that there was no fraud and collusion in this case, but that plaintiff's counsel obtained in settlement the most that was achievable. As indicated, the Eleventh Circuit has said that the court should be hesitant to substitute its judgment for that of counsel. <u>Canupp</u> v. <u>Liberty Behavioral Healthcare Corp.</u>, <u>supra</u>. That

principle is especially apt here in light of my knowledge of the ability and character of Felman and Yanes.

As Felman stated at the hearing, no one has proposed a better settlement plan, adding that, if someone had, he would have pursued it. It is easy enough for the objectors to criticize the plan from the sidelines, particularly in view of the lack of payment to the Class members. They do not have to deal with the legal hurdles in this case, such as an interlocutory appeal by CareOne and the substantial challenges by Ruther and Persels to personal jurisdiction; they do not have to incur the expense of further proceedings; they do not have to expend the effort to take this case to trial without any assurance of compensation; and they do not have to worry about the uncollectability of a judgment if the prosecution is successful. In other words, the objectors essentially ignore the real life practicalities that Felman faced.

For the foregoing reasons, the settlement agreement should not be rejected because it does not provide a monetary benefit to the Class members. Having herded the elephant out of the room, there are no other circumstances that warrant rejection of the agreement.

B. Class action factors.

As indicated, the Eleventh Circuit has explained that courts should consider several factors when deciding whether to approve a class action settlement. These factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement is achieved. Sterling v. Stewart, supra; Bennett v. Behring Corp., supra. Consideration of these factors supports approval of the proposed settlement in this class action.

While there are uncertainties inherent in pursuing any trial, this case involves significant risks if litigation proceeds. First, as indicated, recovery is not certain even if the Class is successful at trial, since they may not be able to collect on the judgment. See In re Rent-Way Securities Litigation, 305 F.Supp.2d 491, 505-08 (W.D. Pa. 2003) (establishing liability at trial may be nothing more than a pyrrhic victory because there is a serious risk that the judgment would not be collectable). Not only are the law firm

-24-

defendants facing financial hardship, but as Class counsel appropriately notes, "[w]hatever amount could be collected on behalf of the Class would be diminished by litigation costs, the cost of providing notice to the class, and the costs of administering and distributing a monetary class recovery" (Doc. 150, p. 11).

Further, the likelihood of the Class succeeding on the merits is far from clear. The defendants point out serious problems with the plaintiff's claims (Doc. 144, pp. 9-13). In particular, two individual defendants, Jimmy B. Persels and Neil J. Ruther, both residents of Maryland, may have a valid argument that this court does not have personal jurisdiction over them (see Doc. 39; Doc. 144, p. 10). Further, CareOne believes that arbitration is the appropriate forum, and at the hearing, its counsel indicated an intention, if settlement is not approved, to appeal my Order partially denying its request for arbitration. As Class counsel notes, there are additional risks that the defendants might defeat the Class certification or take a final appeal should the Class prevail at trial (Doc. 150, p. 10). Therefore, this factor favors settlement.

-25-

The second and third factors that the court shall consider are the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, reasonable, and adequate. The range of a possible verdict is from zero, as the defendants assert (Doc. 144, pp. 13-14), to more than 125 million dollars. That, however, is not the range of actual recovery, *i.e.*, collectability. The range for each Class member, as previously explained, is from zero to a minimal recovery. Further, as shown in detail, the point at which the settlement is fair, reasonable, and adequate includes no monetary recovery by the Class members.

The parties point out that the proposed settlement agreement provides for injunctive relief against the law firm defendants. In particular, the settlement requires the defendants to improve communication procedures with clients, modify their retainer agreement disclosures, and adopt a new fee collecting program (id., pp. 6-8; Doc. 150, pp. 4-5). Objector Gunn argues that this relief is not beneficial to the Class because: (1) it requires the defendants to "obey the law," (2) it does not provide for modification of agreements entered into prior to October 1, 2010, and (3) the provision requiring the establishment of a "process" for communication with clients

-26-

would "require no more of [the defendants] than applicable codes of legal ethics" (Doc. 133, pp. 7-8).

While it is recognized that the injunctive relief will probably not assist the Class members unless they deal with the law firm again, the defendants reasonably assert that "an important public benefit has been achieved" (Doc. 144, p. 15). The defendants explained (id.):

> The Law Firm Defendants gave up certain rights with respect to their business practices. Persels & Associates, LLC, for example, agreed to forfeit its right to charge fixed fees for legal services. As a result of the Settlement Agreement, Persels & Associates, LLC can only charge contingency fees after negotiation of a settlement with the client's creditors (aside from a one-time initial consultation fee).

Further, one of plaintiff Day's particular grievances was her inability to obtain timely help from any attorney (Doc. 150, p. 13). That situation has been remedied by the implementation of a new computer program to facilitate communications with Class members and future clients (id.). At the hearing, attorney Knight indicated that the defendants incurred significant costs to implement this new program. These improvements in the defendants' business practices cannot be dismissed on the ground that they

-27-

simply require the defendants to obey the law and comply with rules of ethics. As the plaintiff points out, the defendants took the position that the CROA did not apply to them and that their practices did not violate the law (id., p. 12). As a result of the settlement agreement, these contentions have been eliminated and the defendants' business practices have changed. Consequently, it is fair to say that the settlement achieved an important public benefit.

The next factor, complexity, expense, and duration of litigation, also supports the approval of the proposed settlement. Continued litigation would obviously entail a time-consuming, and expensive, trial and appeals. As Class counsel indicates, "in the absence of a settlement, [this Track Three] case would likely have continued for another one to two years in this Court ... and likely additional time on appeal, consuming considerable time and resources on the part of counsel and the court system" (id., p. 16). It is also likely that a significant amount of motion practice would result if this case were to continue. Thus, noting that they would "strenuously object[] to class certification," the law firm defendants point out that "[d]iscovery on class issues would have involved depositions from class members from throughout

-28-

the country to demonstrate that they are not similarly situated to Plaintiff" (Doc. 144, p. 16). This factor, therefore, weighs in favor of settlement.

For reasons previously stated, the factors of the substance and the amount of opposition also do not warrant disapproval of the settlement. The Notice Plan effectively provided notice to approximately 98.4% of the Class, and only 325 Class members submitted exclusion requests by the opt-out deadline. Several of the exclusion requests and objections were submitted not in opposition to the terms of the settlement proposal, but because the Class members were opposed to the lawsuit in its entirety. Further, only five Class members filed objections based on the proposed terms.

As indicated, the primary objection to the proposed settlement is that it provides no monetary relief to the individual Class members (Docs. 133, 134, 149, 153, 154). That circumstance does not justify rejection of the settlement, as already explained in detail. Moreover, the objections, which did not offer a better approach, were made by those who did not have to struggle with the practicalities of this case.

Objectors Gunn and Lee also opposed the distribution of a *cy pres* award to the American Bar Foundation, arguing that this organization is

unrelated to the concerns of the instant case (Doc. 133, pp. 13-17; Doc. 134, p. 2). Significantly, the parties have addressed this objection. Thus, they have modified the settlement agreement to grant the *cy pres* award to the Institute for Financial Literacy and the CARE Program, both financial education organizations (Doc. 144, p. 18; Doc. 147, pp. 4-5). Objector Gunn argues that this amended *cy pres* distribution is also not appropriate because this is not a case wherein payments to Class members is economically unfeasible, and the possible recovery in this case is not small (Doc. 149, p. 8). However, as the CareOne defendants persuasively state, the modified *cy pres* distribution is "appropriate because distributing $100,000 to approximately 125,000 individual class members is simply not economically practical" (Doc. 147, p. 5). Indeed, such a distribution would result in an insignificant recovery for the Class members.

Further, objector Gunn criticized the release provisions of the settlement agreement. However, as Class counsel notes, the settlement agreement was amended to eliminate the release of "unknown claims," thereby narrowing the scope of the release (Doc. 150, pp. 17-19). Further, the defendants point out that "[t]he parties have also agreed to modify the release

as it pertains to any potential legal malpractice claims that a Class Member may have alleging actionable negligence in the performance of the legal services of the firm" (Doc. 144, p. 18).

Finally, the court should consider the stage of the proceedings at which the settlement is achieved. Here, the proposed settlement is occurring early enough in the litigation so that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision.

This case was filed on November 4, 2010, and has involved a hearing on motions to dismiss, document discovery, Rule 26 disclosures, and settlement negotiations. Thus, the parties have had sufficient time to evaluate the strengths and weaknesses of their cases, and to weigh the benefits of settlement against further litigation. Further, none of the parties indicated a lack of information undermined its ability to make an informed decision about the propriety of a settlement. In fact, Class counsel stated that it "agreed to this Settlement on the basis of a well-informed and clear understanding of the value of the claims being compromised and the benefits being obtained" (Doc. 150, p. 19). Moreover, counsel for the Class are seasoned attorneys and

they have determined that this settlement is the best option under the circumstances. See Canupp v. Liberty Behavioral Healthcare Corp., supra, 447 Fed. Appx. at 977-78 ("In considering the settlement, the court is entitled to rely upon the judgment of experienced counsel for the parties.").

C. Class certification.

The Order approving the preliminary settlement agreement also conditionally certified the Class in this case (Doc. 112, p. 2). At that time, the Class was defined as follows (id.):

> All persons who entered into retainer agreements with Griffith & Ruther, LLC, Ruther & Associates, LLC or Persels & Associates, LLC on or after April 28, 2005, to receive legal advice and other legal services, including Debt Settlement Legal Services, focused on helping the consumers get out of debt.   The Settlement Class excludes: any individual who satisfies the class definition proposed in the first amended class action complaint filed in Bronzich v. Persels & Associates, LLC, et al., No. CV-10-00364-EFS, currently pending in the United States District Court for the Eastern District of Washington.

Noting that no objections to certification have been received, Class counsel argues that this court "should also find that the Class was properly certified for settlement" (Doc. 150, p. 19).

-32-

"A class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b)." Rutstein v. Avis Rent-A-Car Systems, Inc., 211 F.3d 1228, 1233 (11th Cir. 2000) (quoting Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997)). Federal Rule of Civil Procedure 23(a) requires:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The proposed Class must also satisfy one of three subsections of Rule 23(b). In this case, the representative plaintiff seeks certification under Rule 23(b)(3), which authorizes class actions where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In this case, it is clear that the requirements of Rule 23(a) have been met. The size of the Class, over 125,000 members, would certainly

-33-

make "joinder of all members ... impracticable." Further, this case involves common questions of law and fact (see Doc. 98, pp. 7-8). The legal issues presented by the representative plaintiff (violations of the CROA) also appear to be typical of the Class. Finally, Class counsel reasonably states that "Ms. Day has no conflicts with the members of the class and has adequately carried out her role as class representative" (Doc. 150, p. 20).

With respect to Rule 23(b)(3), that requirement also appears to be satisfied. The circumstances of this case involving a course of conduct common to the Class members and the agreement to injunctive relief support the factor of predominance. In addition, the significant size of the Class and the distribution of Class members throughout the country weigh in favor of finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Thus, in light of these considerations and the fact that there has been no objection to Class certification, the certification of the Class will be confirmed.

D. Petition for attorneys' fees and costs.

In addition to approval of the proposed settlement agreement, Class counsel petitions for an award of an attorneys' fee and costs in the amount of $300,000 (Doc. 150, pp. 21-25). Class counsel notes that the requested fee is just slightly more than the lodestar amount incurred to date on the litigation of this case (id., pp. 22-23). At the hearing, counsel for the defendants, who will pay the fee, indicated that they had no objection to this request.

Objector Gunn, however, contends that an attorneys' fee should not be awarded in this case because Class counsel did not obtain a benefit for the Class (Doc. 133, pp. 17-18). That, of course, is not an objection to the computation of the fee, but only to the award of any fee at all. Having concluded that the settlement is fair, reasonable, and adequate, an attorneys' fee is clearly proper. Moreover, since there is no challenge to the amount of the fee and costs, plaintiff's counsel shall be awarded $300,000.

E. Notice plan.

The motion filed by Class counsel also requests that this court "hold that the notice provided to the Class was adequate to comply with the

requirements of due process" (Doc. 150, p. 21). Having already indicated that the Notice satisfied due process, that finding will be made explicit.

Objector Gunn contends that the Notice was inadequate because it did not "fairly describe the settlement" or "provide a link to the actual [settlement] agreement" (Doc. 133, p. 9). Notably, with the exception of objector Lee who incorporated all of Gunn's objections by reference, no other Class member made such a claim.

Further, contrary to Gunn's contentions, the Notice was very effective. As indicated, the Notice was sent to 98.4% of the Class, and as a result, Class counsel hired additional personnel to handle inquiries about this case and the settlement. Additionally, 325 Class members chose to submit opt-out requests. Finally, as correctly stated by Class counsel, "[t]he Notice itself thoroughly and clearly explained the terms of the Settlement and class members' options" (Doc. 150, p. 21). Thus, the Notice satisfied the requirements of due process.

F. Award to the representative plaintiff.

Finally, Class counsel moves for the approval of the $5,000 incentive payment to plaintiff Day (id., p. 25). A named plaintiff is "entitled

to some incentive award given her effort in bringing [the] action and her participation in discovery." <u>Aramburu</u> v. <u>Healthcare Fin. Servs., Inc.</u>, 2009 WL 1086938 *5 (E.D.N.Y. April 22, 2009).

Objector Gunn contends that Day should not be awarded an incentive payment because "the representative plaintiff obtained no benefit for the class" (Doc. 133, p. 18). As with the similar objection to the award of an attorneys' fee, this objection is meritless since the settlement agreement is being approved.

It is, therefore, upon consideration,

ORDERED:

That the parties' motions to approve the settlement (Docs. 144, 147, 150) be, and the same are hereby, **GRANTED,** and the settlement agreement is hereby **APPROVED,** including the award of $300,000 in an attorneys' fee and costs to Class counsel, and a payment of $5,000 to plaintiff

Miranda Day.  The Clerk is DIRECTED to administratively CLOSE this case

with the right of the parties to re-open in sixty (60) days.

DONE and ORDERED at Tampa, Florida, this ___ day of

March, 2012.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE