[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11887

_____

D.C. Docket No. 8:10-cv-02463-TGW

MIRANDA L. DAY,

Plaintiff - Appellee,

RAYMOND GUNN,

Interested Party - Appellant,

versus

PERSELS & ASSOCIATES, LLC,
a Maryland limited liability company,
RUTHER & ASSOCIATES, LLC,
JIMMY B. PERSELS,
ROBYN R. FREEDMAN,
CAREONE SERVICES, INC., a Maryland corporation,
f.k.a. Freedom Point,
LEGAL ADVICE LINE, LLC,

Defendants - Appellees,

3C INCORPORATED, etc., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 10, 2013)

Before PRYOR and JORDAN, Circuit Judges, and PRO,[*] District Judge.

PRYOR, Circuit Judge:

This appeal requires that we resolve two main issues: first, whether a magistrate judge had subject-matter jurisdiction to enter a final judgment in a class action without first obtaining the consent of the absent members of the class; and second, whether a judge abused his discretion when he found that seven defendants would be financially unable to satisfy a judgment even though no evidence about the financial position of six of the defendants had been introduced.  Miranda Day sued several debt management businesses and individual employees of those businesses on behalf of herself and a statewide class of about 10,000 consumers. Day and the defendants consented to allow a magistrate judge to enter a final judgment in the class action.  28 U.S.C. § 636(c).  Day and the defendants then informed the magistrate judge that they had reached a settlement agreement, which expanded the definition of the class to a nationwide class of 125,000 consumers and released most of the claims of that class in exchange for no monetary relief for

_____

[*]Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

the absent class members.  At a fairness hearing on the settlement agreement, Day and the defendants argued that the defendants would be financially unable to satisfy a judgment, but the evidence in the record supported the conclusion that only one of the defendants, Persels & Associates, LLC, would be financially unable to satisfy a significant judgment.  The magistrate judge concluded that the settlement agreement was fair, adequate, and reasonable even though it did not provide any monetary relief to the absent class members because the defendants would be unable to satisfy a significant judgment.  We conclude that the magistrate judge had subject-matter jurisdiction to enter a final judgment because absent class members are not parties whose consent is required for a magistrate judge to enter a final judgment under section 636(c).  But we vacate that judgment because the magistrate judge abused his discretion when he found, without adequate evidentiary support, that the defendants could not satisfy a significant judgment, and we remand for further proceedings.

## I.  BACKGROUND

CareOne Services, Inc., offered credit counseling services that purported to allow debtors to lower their payments and pay off their debts.  In November 2007, Miranda Day enrolled in CareOne's credit counseling services.  As part of that arrangement with CareOne, Day received and entered a retainer agreement with Ruther & Associates, LLC, a law firm managed by Neil J. Ruther, and with

CareOne for debt resolution services.  Under the agreement, Day would make

monthly payments to Ruther & Associates and CareOne instead of paying her

creditors.  Ruther & Associates and CareOne would accumulate these funds in an

escrow account.  Ruther & Associates and CareOne would then negotiate on behalf

of Day with her creditors to settle her debt with payments from the escrow account.

The agreement also provided that Ruther & Associates and CareOne would deduct

a legal fee in the amount of 15 percent of Day's debt before she entered the

agreement from her monthly payments.  The agreement provided that the fees

could be higher based on the complexity of the representation.  When Ruther

retired in 2008, he transferred the law firm to Jimmy B. Persels, and Persels

renamed the law firm Persels & Associates, LLC.  Both law firms employed

Robyn R. Freedman, an attorney licensed in Florida, to assist in the credit

counseling services, and Freedman was assigned to represent Day.

　　Day paid six monthly payments of $212.39 from January to June 2008 for a

total payment of $1,274.34.  None of the money that Day paid to the law firms was

disbursed to her creditors.  Instead, the funds paid for fees of the law firms.  As a

result of nonpayment, one of Day's creditors sued her on April 17, 2008, and Day

tried to contact both CareOne and Ruther & Associates immediately after being

served.  In response to her inquiries, Day received an email from Freedman on

April 21, 2008, that told her that Freedman had reviewed her file and would be

working with the paralegal negotiators at CareOne to resolve her disputes with her creditors.  Day received no further assistance from CareOne or any of the attorneys or law firms, and a default judgment was entered against her on July 10, 2008. After the court entered a default judgment, Day received a form answer to the complaint of her creditor that stated that it had been prepared by or with the assistance of Legal Advice Line, LLC.

In July 2008, another creditor sued Day.  She again tried to contact CareOne, the law firms, and Freedman.  A CareOne representative assured Day that CareOne would take care of the matter, but CareOne, Freedman, and the law firms failed to assist Day in that matter.  Day filed for bankruptcy on July 15, 2008.

Day sued CareOne, Persels & Associates, Ruther & Associates, Persels, Ruther, Freedman, several companies that had provided debt settlement services but not legal representation to her, and one individual, who had provided debt settlement services to her.  Day sued on behalf of herself and a class of 10,000 similarly situated residents of Florida who had sought credit counseling services from CareOne.  Fed. R. Civ. P. 23(b)(3).  In her complaint, Day alleged that the debt management defendants were liable to her and the class under the Florida Deceptive and Unfair Trade Practices Act, the Credit Repair Organizations Act, and based on several causes of action under common law.  The defendants who did not provide legal representation, including CareOne, moved to stay the action

5

against them and compel arbitration.  The district court granted the motion to

compel arbitration and stayed the action against all of those defendants except

CareOne.  The district court concluded that any claims against CareOne that arose

from the retainer agreement could not be stayed because that agreement did not

include an arbitration provision.  Day and the legal service defendants, including

CareOne, then consented to have a magistrate judge conduct all proceedings and to

allow the magistrate judge to enter a final judgment.  See 28 U.S.C. § 636(c).

Day filed an amended complaint on behalf of herself and about 10,000

similarly situated Florida residents.  Fed. R. Civ. P. 23(b)(3).  The amended

complaint added Legal Advice Line as a defendant.  In her amended complaint,

Day alleged that the legal service defendants were liable to her and the class under

the Credit Repair Organizations Act and several causes of action under common

law.

Eighteen days after Day filed the amended complaint, Day and the legal

services defendants, including Legal Advice Line, notified the court that they had

reached an agreement in principle on the resolution of the case and that they

intended to enter a final settlement agreement in about 60 days.  Day and the legal

services defendants then entered a settlement agreement.  The settlement

agreement defined the class as all persons in the United States who had entered

agreements for legal advice concerning debt with the legal service defendants on or

6

after April 28, 2008, except those consumers who were class members in a class action pending in the Eastern District of Washington.  The class, as defined by the settlement agreement, included over 125,000 absent plaintiffs.

The settlement agreement limited the ability of the legal service defendants to collect fees from a client who entered a retainer agreement for debt management services after October 1, 2010.  Under the agreement, the legal service defendants could collect fees from one of these clients only after the defendants negotiated a settlement with that client's creditor.  The agreement also required the legal services defendants to modify their retainer agreement to disclose the amount that the client would pay in legal fees and to establish processes to ensure that clients seeking the assistance of an attorney were able to communicate with the attorney within a reasonable time.  The agreement included a $100,000 cy pres payment to the American Bar Foundation.  The agreement required that the legal services defendants pay the costs of administering the settlement and a $5,000 incentive payment to Day.  The agreement also provided that the legal services defendants would pay attorney's fees up to $300,000, and that the complaint would be dismissed with prejudice.  The agreement provided no monetary relief to the absent plaintiffs, but released any claims that an absent plaintiff had against the legal services defendants.

The magistrate judge conditionally certified the class, appointed Day's counsel as class counsel, scheduled a fairness hearing, approved the notice of proposed class action, and granted preliminary approval to the settlement agreement.  The parties sent notice of the class action and the settlement to over 98 percent of the class members and the attorneys general of every state except Washington.  The notice informed class members that they could opt out of the class and that, if they opted out of the class, the settlement would not bar them from pursuing their individual claims against the legal service defendants.  Three hundred and twenty-five class members opted out of the class.

The notice also informed class members of the procedure to object to the proposed settlement.  The notice explained that the final approval hearing would be "before Magistrate Judge Thomas G. Wilson," but the notice did not inform class members that Day had consented to have the magistrate judge enter a final judgment or provide any other notice that the magistrate judge would enter a final judgment.

Five class members, including Raymond Gunn, and the Attorneys General of Connecticut, Florida, Maine, New York, and West Virginia objected to the settlement agreement.  In his objection, Gunn argued that the settlement agreement was not fair, adequate, and reasonable because the class members received no monetary relief in return for an overly broad release of claims that could

potentially be valuable, that the cy pres distribution was inappropriate, that the

American Bar Foundation was an inappropriate recipient even if a cy pres

distribution were warranted, and that the attorney's fee and incentive payment

could not be justified in the light of the result achieved for the class.

During the week before the settlement hearing, Day and the legal services

defendants filed separate motions for final approval of the settlement agreement,

and the motions explained that the settlement had been revised in response to

Gunn's objections in two ways.  First, the revised agreement did not release claims

of legal malpractice that were unrelated to the allegations in the complaint.

Second, the revised agreement changed the recipient of the cy pres payment from

the American Bar Foundation to two organizations with purposes more closely

aligned with the members of the class.  Day's motion for approval stated that

information provided during informal discovery established that the defendants

would be unable to pay a substantial settlement or judgment.

At the fairness hearing, class counsel argued that the settlement should be

approved because it held the defendants accountable for their actions and no

objector had offered a better solution.  Class counsel also asserted that few of the

class members had objected or chosen to be excluded from the class and that it was

uncertain if any judgment could be collected.  When the district court asked class

counsel what inquiry he made into collectability, class counsel responded that he

had inquired about collectability and relied on the response of the legal service defendants.  Counsel for Persels & Associates also stated that the recovery of a judgment was doubtful because Persels & Associates had suffered net losses for two years and owed $14 million on a separate settlement agreement.  Counsel for CareOne asserted that, if the matter was not settled, adjudication against CareOne would be delayed because it intended to appeal the denial of the motion to compel arbitration.

Gunn argued that the court should not approve the settlement.  Gunn argued that the settlement agreement required class members to relinquish valuable rights for no monetary compensation.  He also argued that the injunctive relief failed to compensate the class because it required only that the legal service defendants comply with federal regulations.

After the hearing, the managing member of Persels & Associates, Ruther, filed a declaration about the financial condition of Persels & Associates.  Ruther averred that Persels & Associates had sustained a net loss of $5,857,269 during the calendar years of 2010 and 2011.  Ruther also averred that Persel & Associates had entered a settlement agreement in another matter in which it was required to pay $18 million and that Persels & Associates still owed $14 million under that agreement.  Ruther averred that the amount owed under that agreement was secured by all assets of the firm.  Ruther also averred that CareOne had modified

software at his request and that he had been told that the cost of this modification

exceeded $350,000.  Ruther's declaration included no additional information about

the financial condition of any defendant, but Ruther had averred, in a previous

declaration, that, "[t]o the best of [his] knowledge, understanding and belief,"

Ruther, Persels, and Freedman would be unable to satisfy a judgment because they

"are married and [their] assets are held jointly with their spouses and are therefore

protected from levy or execution."

The magistrate judge certified the class and approved the settlement

agreement.  The magistrate judge explained that, although the settlement

agreement provided no monetary relief, the agreement was fair, adequate, and

reasonable because of "(1) the ability of the Class members to opt out of the

settlement agreement; (2) the financial inability of the defendants to pay a

meaningful award, much less to respond to a large judgment; and (3) my complete

confidence in the ability and integrity of . . . counsel . . . ."

The magistrate judge then applied the following six factors to determine

whether the settlement was fair, adequate and reasonable:

> (1) the likelihood of success at trial; (2) the range of possible
> recovery; (3) the point on or below the range of possible recovery at
> which a settlement is fair, adequate and reasonable; (4) the
> complexity, expense, and duration of litigation; (5) the substance and
> amount of opposition to the settlement; and (6) the stage of
> proceedings at which the settlement is achieved.

The magistrate judge stated that "recovery is not certain even if the Class is successful at trial, since they may not be able to collect on the judgment" because "the law firm defendants [are] facing financial hardship."  The magistrate judge then stated that the settlement agreement was fair because "the likelihood of the Class succeeding on the merits is far from clear."  The magistrate judge explained that the "range of actual recovery" was "from zero to a minimal recovery" because the class members would not be able to collect a significant judgment, which supported the conclusion that "the point at which the settlement is fair, reasonable, and adequate includes no monetary recovery by the Class members."  The magistrate judge also concluded that the likely complexity and expense of further litigation supported the approval of the agreement, that the substance and amount of opposition "d[id] not warrant disapproval" of the agreement, and that the stage of proceedings at which the settlement had been achieved supported the approval of the agreement.  The magistrate judge certified the class, awarded class counsel $300,000, and awarded Day $5,000.

## II.  STANDARDS OF REVIEW

This appeal is governed by two standards of review.  We review our subject matter jurisdiction de novo.  Belleri v. United States, 712 F.3d 543, 547 (11th Cir. 2013).  We review the approval of a settlement in a class action for abuse of

discretion.  <u>Faught v. Am. Home Shield Corp.</u>, 668 F.3d 1233, 1239 (11th Cir.

2011).

## III.  DISCUSSION

We divide our discussion in two parts.  First, we explain that the magistrate

judge had subject-matter jurisdiction to enter a final judgment.  Second, we explain

that the magistrate judge abused his discretion when he found that the legal service

defendants were financially unable to satisfy a significant judgment.

### A.  *The Magistrate Judge Had Subject-Matter Jurisdiction to Enter a Final Judgment.*

We divide our discussion of our jurisdiction in two parts.  First, we explain

that the magistrate judge had statutory jurisdiction to enter a final judgment.

Second, we explain that the magistrate judge had constitutional jurisdiction to enter

the judgment.

### 1.  The Magistrate Judge Had Jurisdiction, Under the Federal Magistrates Act, to Enter a Final Judgment.

The Federal Magistrates Act provides that, "[u]pon the consent of the

parties," a magistrate judge "may conduct any or all proceedings in a jury or

nonjury civil matter and order the entry of judgment in the case, when specially

designated to exercise such jurisdiction by the district court or courts he serves."

28 U.S.C. § 636(c)(1).  After the magistrate judge enters a final judgment, "an

aggrieved party may appeal directly to the appropriate United States court of

appeals." 28 U.S.C. § 636(c)(3).  The National Association of Consumer

Advocates, as amicus curiae, argues that the magistrate judge lacked jurisdiction

because the absent plaintiffs are parties under section 636(c)(1) and never

consented to the entry of a final judgment by a magistrate judge, but we disagree.

We conclude, as have the Third and Seventh Circuits, that absent class

members are not "parties" whose consent is required for a magistrate judge to enter

a final judgment under section 636(c).  See Dewey v. Volkswagen

Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir. 2012); Williams v. Gen. Elec.

Capital Auto Lease, Inc., 159 F.3d 266, 269 (7th Cir. 1998); see also, William B.

Rubenstein, et al., Newberg on Class Actions § 1:1 ("Class actions are a form of

representative litigation.  One or more class representatives litigate on behalf of

those class members, and those class members are bound by the outcome of the

representative's litigation.").  Our conclusion is supported by the ordinary legal

meaning of the term "parties" in 1979, the presumption of consistent usage, and the

practical approach to interpreting the term "party" adopted by the Supreme Court

in Devlin v. Scardelletti, 536 U.S. 1, 7–14 122 S. Ct. 2005, 2009–13 (2002).

When Congress leaves a term in a statute undefined, "we must 'give it its

ordinary meaning,' keeping in mind the context of the statute."  United States v.

Jimenez, 705 F.3d 1305, 1308 (11th Cir. 2013) (quoting United States v. Santos,

553 U.S. 507, 511, 128 S. Ct. 2020, 2024 (2008)).  "And when the law is the

subject, ordinary legal meaning is to be expected . . . ."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012).  To interpret the term "party" in context, it "must be given the [ordinary legal] meaning [it] had when the text was adopted."  Id. at 78.

The ordinary legal meaning of the term "party," when Congress added the relevant language of section 636(c)(1) in 1979, suggests that the term "parties" excludes absent class members.  See Federal Magistrate Act of 1979, Pub. L. No. 96–82, § 2, 93 Stat. 643 (1979).  This conclusion is supported by the contemporaneous version of Black's Law Dictionary, the contemporaneous First Restatement of Judgments, the Second Restatement of Judgments published three years after the addition of the relevant language, and a decision of the Supreme Court six years after the amendment to section 636(c)(1).

The fifth edition of Black's Law Dictionary, published the same year that Congress added the relevant language, explained that "[a] 'party' to an action is a person whose name is designated on record as plaintiff or defendant."  Black's Law Dictionary 1010 (5th ed. 1979).  Black's Law Dictionary also made clear that the term "party" "[i]n general, means one having the right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from judgment," and that "party" "refers to those by or against whom a legal suit is brought."  Id.  Absent class members are not designated on record as a plaintiff or

defendant.  Absent class members also ordinarily lack the power to control

proceedings.  And a suit is not brought "by or against" absent class members.

Instead, the Federal Rules of Civil Procedure provide that "[o]ne or more members

of a class may sue or be sued as representative parties on behalf of all members"

when the requirements for a class action have been met.  Fed. R. Civ. P. 23(a).

The Restatement (First) of Judgments, which was the only version available

when Congress added the relevant language, explained that "[a] class action is an

illustration of a situation where it is not feasible for all persons whose interests

may be affected by an action to be made parties to it."  Restatement (First) of

Judgments § 86 cmt. b (1942).  And the Restatement (First) made clear that, as the

Seventh Circuit has noted, "[g]enerally speaking, absent class members are not

'parties' before the court in the sense of being able to direct the litigation,"

Williams, 159 F.3d at 269, because "the expense and difficulty of making all

persons who have interests in the proceeding parties to it outweigh the normal

desirability of not depriving persons of causes of action or of defenses without

giving them an opportunity to be heard," Restatement (First) of Judgments § 86,

cmt. B (1942).  In the absence of class members as parties, the class representative,

who is a named plaintiff, must "purport to act on behalf of all."  Id.

The Restatement (Second) of Judgments, which was published three years

after the relevant portion of section 636(c)(1) was added, adhered as follows to the

understanding of the term "party" in a class action that had been expressed in the

Restatement (First):

> A person who is not a party to an action but who is represented by a
> party is bound by and entitled to the benefits of a judgment as though
> he were a party.  A person is represented by a party who is . . . [t]he
> representative of a class of persons similarly situated, designated as
> such with the approval of the court, of which the person is a member.

Restatement (Second) of Judgments § 41(1)(e) (1982).  The Restatement (Second)

explained that the class representative had "the requisite authority, and generally

the exclusive authority, to participate as a party on behalf of the represented

person."  Id. § 41 cmt. a.

And the decision of the Supreme Court in Phillips Petroleum Co. v. Shutts,

472 U.S. 797, 105 S. Ct. 2965 (1985), six years after the addition of the relevant

portion of section 636(c)(1), also suggests that, at least for purposes of the

management of the litigation, an absent class member who has not intervened is

not a party.  In Shutts, the Supreme Court held that a class representative may

choose to file a class action in a jurisdiction that would not otherwise have

personal jurisdiction over the absent class member so long as sufficient notice is

provided to the absent class members and they are given an opportunity to opt out.

Id. at 811–12, 105 S. Ct. at 2974–75.  The Court explained that an opt-in

procedure, similar to a requirement that each absent class member consent to the

entry of a judgment by a magistrate judge, was unnecessary for a state court to

exercise personal jurisdiction because a rule "[r]equiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit." Id.  These authorities suggest that Congress excluded absent class members when it used the term "parties" in section 636(c)(1) because the ordinary legal meaning of "parties" excluded absent class members.  See also Pearson v. Ecological Sci. Corp., 522 F.2d 171, 176 (5th Cir. 1975) (referring to absent class members as "nonparty class members").

Our reading of the term "parties" in section 636(c)(1) to exclude absent class members is also supported by the "presumption that a given term is used to mean the same thing throughout a statute."  See Barber v. Thomas, — U.S. —, 130 S. Ct. 2499, 2506 (2010) (quoting Brown v. Gardner, 513 U.S. 115, 118, 115 S. Ct. 552, 555 (1994)).  Section 636 uses the word "parties" in several places: subsection (c)(1) requires the "consent of the parties" for the exercise of jurisdiction by a magistrate judge in a civil action; subsection (c)(2) provides that, if a magistrate judge is designated to exercise jurisdiction, "the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction"; subsection (c)(2) also provides that, after the "decision of the parties [has] be[en] communicated to the clerk of court[,] . . . the district court

18

judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences"; and subsection (b)(1)(c) states that a magistrate judge who has been assigned to conduct evidentiary hearings, but not to render a judgment, "shall file his proposed findings and recommendations . . . with the court and a copy shall forthwith be mailed to all parties." 28 U.S.C. § 636(b), (c).  If we were to interpret the word "parties" in the consent provision to include absent class members, we would also interpret the word "parties" in the other provisions of section 636 to include absent class members based on the presumption that a word is used consistently throughout a statute.  But to apply that broad definition of the word "parties" throughout the statute would greatly increase the costs of class actions and the burdens on the courts.  Under subsection (b)(1), the court would be responsible for notifying all absent members of a class of the report and recommendations of a magistrate judge.  And if the absent class members consented to adjudication of their claims by a magistrate judge, the clerk of the court would be required, under subsection (c)(2), to notify those absent class members of the availability of a magistrate judge to exercise such jurisdiction.  To be sure, subsection (c)(3) instructs that "an aggrieved party may appeal directly to the appropriate United States court of appeals," id. § 636(c)(3), and the Supreme Court has held that, under its

precedents, an absent class member who unsuccessfully objects to a proposed

settlement may appeal the approval of that settlement, Devlin, 536 U.S. at 14, 122

S. Ct. at 2012.  But the Supreme Court in Devlin did not purport to determine the

meaning of the term "party" in any provision of section 636.  For the purpose of

the consent requirement of section 636(c), absent class members "are more

accurately regarded as having something less than full party status."  See Williams,

159 F.3d at 269.

Our decision that absent class members are not "parties" under section

636(c)(1) is also supported by the pragmatic approach to defining the term "party"

adopted by the Supreme Court in Devlin.  In that decision, the Court explained

that, in a class action, "[n]onnamed class members . . . may be parties for some

purposes and not for others," and "[t]he label 'party' does not indicate an absolute

characteristic, but rather a conclusion about the applicability of various procedural

rules that may differ based on context."  Devlin, 536 U.S. at 9–10, 122 S. Ct. at

2010.  The Court then explained that absent class members are treated as parties

for some purposes "to simplify litigation involving a large number of class

members with similar claims."  Id. at 10, 122 S. Ct. at 2010–11.  The Court also

explained that the rule that absent class members are not parties for the purpose of

diversity jurisdiction "is likewise justified by the goals of class action litigation"

because "[e]ase of administration of class actions would be compromised by

20

having to consider the citizenship of all class members" and "considering all class members for these purposes would destroy diversity in almost all class actions." Id., 122 S. Ct. at 2011.

The purposes of class actions support the exclusion of absent class members from the term "parties" in section 636(c). "From a practical standpoint," the inclusion of absent class members as parties under section 636(c) "would virtually eliminate § 636(c) referrals to magistrate judges in all potential class actions, because it would de facto transform all such cases into 'opt-in' style actions and fundamentally change the capacity of the judgment . . . to bind both sides in the absence of express consents." Williams, 159 F.3d at 269.  Such a decision would not serve the "goals of class action litigation" including "simplif[ication] [of] litigation involving a large number of class members with similar claims" and "[e]ase of administration."  Devlin, 536 U.S. at 10, 122 S. Ct. at 2010–11.  In the context of personal jurisdiction, the Supreme Court has explained that "[r]equiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit."  Shutts, 472 U.S. at 812–13, 105 S. Ct. at 2975.  "[T]he benefit offered in return for consent to trial before a magistrate judge is the prospect of an earlier trial or other form of case resolution than could be arrived at by a district judge."  R.

Lawrence Dessem, The Role of the Federal Magistrate in Civil Justice Reform, 67 St. John's L. Rev. 799, 828 (1993).  The benefit of an earlier, and potentially less expensive, adjudication is most likely to be substantial when a class action "involv[es] an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit."  Shutts, 472 U.S. at 813, 105 S. Ct. at 2975.

The limitation on the holding in Devlin to "nonnamed class members . . . who have objected . . . at the fairness hearing," 536 U.S. at 14, 122 S. Ct. at 2013, also supports the conclusion that, at least when the class members have not participated in proceedings, absent class members are not parties under section 636(c).  In Devlin, the Court explained that to refuse to allow a class member who had objected to a settlement at a fairness hearing to appeal the approval of the settlement "would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court."  Id. at 10, 122 S. Ct. at 2011.  We have explained, "Devlin held that nonnamed members of class actions who have timely objected to a class settlement may appeal the denial of their objections without first moving to intervene."  AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1309 (11th Cir. 2004).  And our sister circuits agree that Devlin is limited to treating absent class members as parties for the purpose of appeal only

when they objected to a settlement approved by the district court.  See, e.g., Robert

F. Booth Trust v. Crowley, 687 F.3d 314, 319 (7th Cir. 2012) ("Devlin holds that a

member of a class certified under Rule 23, who asks the district court not to

approve a settlement, need not intervene in order to appeal an adverse decision.");

Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1019 (9th Cir. 2012) ("In

Devlin, the Supreme Court considered whether a non-named, absent class member

who objects to a settlement, but who cannot opt out because the class action was

certified under Rule 23(b)(1), must intervene to appeal an objection overruled by

the district court."); Abeyta v. City of Albuquerque, 664 F.3d 792, 796 (10th Cir.

2011) ("[T]he Devlin exception to the Marino rule will only apply where the

nonparty has a unique interest in the litigation and becomes involved in the

resolution of that interest in a timely fashion both at the district court level and on

appeal."); In re Orthopedic Bone Screw Prods. Liab. Litig., 350 F.3d 360, 363 n.3

(3d Cir. 2003) ("Objectors . . . do not qualify as a party for purposes of appealing

[an] original settlement," when they "neither objected at the fairness hearing nor

appealed the settlement, which is now final."); In re Gen. Am. Life Ins. Co. Sales

Practices Litig., 302 F.3d 799, 800 (8th Cir. 2002) ("Devlin concerned the

appellate rights of an unnamed class member who challenged the fairness of a

settlement in a mandatory class action."); cf. In re Lupron Mktg. & Sales Practices

Litig., 677 F.3d 21, 29–30 (1st Cir. 2012) ("The question . . . becomes whether

Devlin, which created an exception for unnamed class members who have objected

to settlement agreements, extends to this situation in which unnamed class

members have objected to a cy pres distribution.").  No circuit court has concluded

that Devlin requires a federal court to treat a passive absent class member as a

party for any purpose.  This reading of Devlin makes sense in the light of the

general rule that, when absent class members have not attempted to participate in

the litigation, those "absent class members are not 'parties' before the court in the

sense of being able to direct the litigation."  Williams, 159 F.3d at 269.

The consumer advocates argue that Devlin suggests that absent class

members are parties under section 636(c) because "without a right to consent

individually, absentees are bound to the named plaintiff's relinquishment of their

rights to an adjudication before an Article III judge," but the absent class members

in this case were not bound in the same sense that the unnamed class member in

Devlin was bound.  In Devlin, the Court held "that nonnamed class members . . .

who have objected in a timely manner to approval of [a] settlement at [a] fairness

hearing have the power to bring an appeal without first intervening," 536 U.S. at

14, 122 S. Ct. at 2013, and explained that "[w]hat is most important to this case is

that nonnamed class members are parties to the proceedings in the sense of being

bound by the settlement," id. at 10, 122 S. Ct. at 2011.  The Court observed that to

refuse to allow a class member who had objected to a settlement at a fairness

hearing to appeal the approval of the settlement "would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court." <u>Id.</u> The Court also explained that this result was especially necessary because the "petitioner had no ability to opt out of the settlement." <u>Id.</u>   A holding that the unnamed class member in <u>Devlin</u> could not appeal the approval of a settlement even though he had objected at a fairness hearing "would [have] deprive[d] nonnamed class members of the power to preserve their own interests," and removed unnamed class members' "only means of protecting [themselves] from being bound by a disposition of [their] rights." 536 U.S. at 10–11, 122 S. Ct. at 2011.

Absent class members would not be deprived of the only means to protect their interests in adjudication before an Article III judge if we were to conclude that they are not parties within the meaning of section 636(c).  Absent class members would instead retain at least three options to protect their rights to the adjudication of their claims by an Article III judge when a class is certified and the named plaintiff has consented to adjudication by a magistrate judge: (1) as the Seventh Circuit explained in <u>Williams</u>, absent class members could "apply to the district court to intervene under Rule 24(a), become . . . part[ies] to the lawsuit, and then exercise [their] right to withhold [their] consent to proceed before the

magistrate judge," 159 F.3d at 269; (2) unlike the absent class member in <u>Devlin</u>, the absent class members in many class actions, including this one, could opt out of a settlement and not be bound by the judgment entered by a non-Article III judge, <u>see</u> <u>Devlin</u>, 536 U.S. at 10–11, 122 S. Ct. at 2011; and (3) "unnamed class member[s] could try to show in a collateral attack that the decision to proceed before a magistrate judge was a matter on which there was a potential (or, in the light of the fully developed record, an actual) significant intra-class conflict and that the notice the absentee[s] received was inadequate to inform [them] of the conflict," <u>Williams</u>, 159 F.3d at 269–70.  As to the first option, although we have not addressed the question, <u>see</u> <u>Gen. Trading, Inc. v. Yale Materials Handling Corp.</u>, 119 F.3d 1485, 1496 (11th Cir. 1997) ("[a]ssuming arguendo that this court would require the consent of latecomers . . . ."), the general view of the federal courts is that, "without the consent of . . . 'intervenors', the magistrate judge's order has the effect only of a report and recommendation to the district judge, who upon the filing of objections must review <u>de novo</u> the recommendation," <u>N.Y. Chinese TV Programs, Inc. v. U.E. Enters.</u>, 996 F.2d 21, 25 (2d Cir. 1993); <u>see also</u> <u>Jaliwala v. United States</u>, 945 F.2d 221, 223 (7th Cir. 1991) ("Without consent [from intervenors], the magistrate had no power to enter an appealable final judgment."); 12 Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 3071.2 (2d ed. 1997) ("If consents are not obtained, these added parties, like any

26

others who have not consented, retain the option of nullifying any resulting

judgment on the ground that they never consented.").  And the practice in at least

some district courts in our Circuit has been for a magistrate judge to draft a report

and recommendation for the district court when a motion to intervene is filed

because "a motion to intervene is a dispositive motion which must ultimately be

decided by an Article III judge in the absence of consent."  Newman v. Sun

Capital, Inc., No. 2:09-cv-445, 2010 WL 326069, at *1 (M.D. Fla. Jan. 21, 2010);

see also Smith v. Powder Mountain, LLC, Nos. 08-80820-civ, 08-cv-81185, 2010

WL 5483327, at *1 (S.D. Fla. Dec. 8, 2010) ("[T]he motion presently before the

Court is a motion to intervene, which, because of its dispositive nature, cannot be

decided by a magistrate judge absent the parties' consent.").

     In contrast with the problem in Devlin, a requirement that the absent class

members individually consent to jurisdiction before a magistrate judge is not

necessary to preserve absent class members' "only means of protecting

[themselves] from being bound by a disposition of [their] rights [they] find[]

unacceptable." Devlin, 536 U.S. at 10–11, 122 S. Ct. at 2011.  As this Court has

explained, Devlin applies to "parties who are actually bound by a judgment, not

[absent class members] who merely could have been bound by the judgment."  See

AAL High Yield Bond Fund, 361 F.3d at 1310; cf. Gautreaux v. Chi. Hous. Auth.,

475 F.3d 845, 851 (7th Cir. 2007) ("Devlin . . . reflects a concern that, without an

opportunity to appeal, unnamed class members will have no other recourse than to

accept the terms of a settlement and to forfeit further pursuit of their claim.");

P.A.C.E. v. Sch. Dist. of Kan. City, 312 F.3d 341, 343 (8th Cir. 2002) ("[P.A.C.E.]

relies only on Devlin, which is not on point [in a challenge to the certification of a

class] because it involved a final order approving settlement of the case.").  The

absent class members could have been bound by the named plaintiff's consent to

the jurisdiction of a magistrate judge, but they also could have avoided that result

in the three separate ways discussed earlier.

The consumer advocates argue that we should read the term "parties" in

section 636(c) to exclude absent class members to avoid a constitutional question

about the authority of the district court to enter a judgment under Article III, but

we disagree.  "Courts do not use this tool when the text of the statute is

unambiguous." Price v. Time, Inc., 416 F.3d 1327, 1342 (11th Cir. 2005).  Based

on the above authorities, the ordinary legal meaning of "parties" in 1979 is clear.

And we will explain in the following subsection that section 636(c), as we read it,

does not violate Article III of the Constitution in any event.

2.  The Magistrate Judge Had Jurisdiction, Under Article III, to Enter a Final
Judgment.

Article III, Section 1, of the Constitution requires that "[t]he judicial Power

of the United States, shall be vested in one supreme Court, and in such inferior

Courts as the Congress may from time to time ordain and establish."  Judges of

Article III courts "shall hold their Offices during good Behaviour" and "receive for their Services . . . a Compensation[] [that] shall not be diminished." U.S. Const. Art. III, § 1. The Supreme Court has identified two purposes served by this constitutional provision: first, Article III acts "to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government," <u>Commodity Futures Trading Comm'n v. Schor</u>, 478 U.S. 833, 848, 106 S. Ct. 3245, 3255 (1986) (citations and internal quotation marks omitted); and, second, Article III "serves . . . to protect the role of the independent judiciary within the constitutional scheme of tripartite government," <u>Id.</u> (citations and internal quotation marks omitted). We have explained that section 636(c) "is constitutional because the act requires that the parties and the district court consent to the transfer of the case to a magistrate and because the district court retains sufficient control over the magistrate." <u>Sinclair</u>, 814 F.2d at 1519.

We divide our discussion of jurisdiction under Article III in three parts. First, we explain that section 636(c) is facially constitutional. Second, we explain that section 636(c) is constitutional as applied to class actions. Third, we explain that, because the argument about due process raised by the amicus curiae does not involve subject-matter jurisdiction, we will not consider it.

      a. Section 636(c) Is Facially Constitutional.

The consumer advocates argue that section 636(c) facially violates Article
III, but we held otherwise in <u>Sinclair</u>.  814 F.2d at 1519.  "[I]t is the firmly
established rule of this Circuit that each succeeding panel is bound by the holding
of the first panel to address an issue of law, unless and until that holding is
overruled en banc, or by the Supreme Court."  <u>United States v. Joseph</u>, 709 F.3d
1082, 1098–99 (11th Cir. 2013) (quoting <u>United States v. Hogan</u>, 986 F.2d 1364,
1369 (11th Cir. 1993)).

The consumer advocates suggest that the decision of the Supreme Court in
<u>Stern v. Marshall</u>, — U.S. —, 131 S. Ct. 2594 (2011), abrogated our decision in
<u>Sinclair</u>, but we disagree.  In <u>Stern</u>, the Court held that, under Article III, a
"Bankruptcy Court . . . lacked the constitutional authority to enter a final judgment
on a state law counterclaim that is not resolved in the process of ruling on a
creditor's proof of claim."  <u>Id.</u> at 2620.  The Court explained that the entry of a
judgment is an exercise of "the essential attributes of judicial power."  <u>Id.</u> at 2618.
The Court rejected an argument that a bankruptcy judge could enter a judgment as
an "adjunct" of a district court and explained that a bankruptcy judge entering a
judgment subject to review by the district court only if a party appealed "can no
more be deemed a mere 'adjunct' of the district court than a district court can be
deemed such an 'adjunct' of the court of appeals." 131 S. Ct. at 2619.  And the
Court explained that, when "the essential attributes of judicial power that are

reserved to Article III courts" are exercised, "it does not matter who appointed the .

. . judge or authorized the judge to render final judgments in such proceedings."

Id. (citations and internal quotations omitted).

Stern did not abrogate our decision in Sinclair.  In Sinclair, we concluded

that section 636(c) was constitutional because "[a]t least nine other circuits" had

reached that conclusion and "we f[ou]nd the reasoning of th[o]se cases

persuasive."  Sinclair, 814 F.2d at 1519.  Stern suggests that some of the factors

cited in those decisions may not provide the district court sufficient control over

magistrate judges to avoid a problem under Article III when a magistrate judge

enters a judgment.  For example, the decisions of our sister circuits relied on the

authority of Article III judges over the selection and retention of magistrate judges

and the ability to appeal to an Article III judge to support the constitutionality of

section 636(c).  See, e.g., Pacemaker Diagnostic Clinic of America, Inc. v.

Instromedix, Inc., 725 F.2d 537, 545–46 (9th Cir. 1984).  But these decisions also

relied on other factors including the "authority to cancel an order of reference, sua

sponte or on application of the parties, in individual cases" for good cause, that the

Supreme Court did not address in Stern.  Id. at 545.  And, in Sinclair, we explained

that the "district court [must] consent to the transfer of the case to a magistrate"

under section 636(c).  Sinclair, 814 F.2d at 1519.  "[T]he doctrine of adherence to

prior precedent . . . mandates that the intervening Supreme Court case actually

abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009). Because Stern did not address many of the factors that led to our conclusion that section 636(c) is constitutional, Stern did not abrogate our decision in Sinclair.

   b. Section 636(c), As Applied to Class Actions, Does Not Violate Article III.

   The consumer advocates also argue that section 636(c) as applied to class actions violates Article III because it allows a magistrate judge to enter a judgment without the consent of the absent class members, but we agree with the Seventh Circuit that section 636(c) does not violate Article III as applied to class actions. Williams, 159 F.3d at 270. We have explained that one reason that "section 636(c) is constitutional [is] because the act requires that the parties . . . consent to the transfer of the case to a magistrate," Sinclair, 814 F.2d at 1519, and in a class action, the named party "is the 'party' to the lawsuit who acts on behalf of the entire class, including with regard to the decision to proceed before a magistrate judge," Williams, 159 F.3d at 269.  Because of the representation of the named party, absent class members do not have the same constitutional interest in the conduct of litigation as a named party.  This conclusion is consistent with the explanation of the Supreme Court, in another context, that "the Due Process Clause . . . does not afford [absent class members] as much protection from state-court

jurisdiction as it does the [named party]." Shutts, 472 U.S. at 811, 105 S. Ct. at 2974.

Absent class members have sufficient tools to protect any interest that they have in litigating before an Article III judge.  As we explained in the previous subsection, absent class members retain at least three options to protect their rights to the adjudication of their claims by an Article III judge when a class is certified and the named class member has consented to adjudication by a magistrate judge: (1) absent class members can apply to intervene in the lawsuit; (2) absent class members in many class actions can opt out of a settlement and not be bound by the judgment entered by a non-Article III judge, see Devlin, 536 U.S. at 10–11, 122 S. Ct. at 2011; and (3) absent class members can bring a collateral attack of the decision of the named class member to consent to the entry of a judgment by the magistrate judge, Williams, 159 F.3d at 269–70.

The consumer advocates argue that the magistrate judge in this case lacked jurisdiction to enter a judgment because Day lacked authority to bind absent class members when she consented to the jurisdiction of the magistrate judge before the class had been certified, but we disagree.  "[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." Standard Fire Ins. Co. v. Knowles, — U.S. —, 133 S. Ct. 1345, 1349 (2013).  The absent class members were not bound by the consent of Day.  As we

explained earlier, absent class members who objected to the jurisdiction of the

magistrate judge could have "appl[ied] to the district court to intervene under Rule

24(a), become . . . part[ies] to the lawsuit, and then exercise [their] right to

withhold [their] consent to proceed before the magistrate judge." Williams, 159

F.3d at 269.  And the practice in at least some districts in our Circuit has been for a

magistrate judge to draft a report and recommendation for the district court when a

motion to intervene is filed because "a motion to intervene is a dispositive motion

which must ultimately be decided by an Article III judge in the absence of

consent."  Newman, 2010 WL 326069, at *1; see also Smith, 2010 WL 5483327,

at *1 ("[T]he motion presently before the Court is a motion to intervene, which,

because of its dispositive nature, cannot be decided by a magistrate judge absent

the parties' consent.").

 c.  We Will Not Address the Argument of the Amicus Curiae About Due Process.

     The consumer advocates argue that the notice to the absent class members

violated their right to due process because it did not provide adequate notice that a

magistrate judge would enter a final judgment, but we need not address this

argument.  "This Court has repeatedly held that an issue not raised in the district

court and raised for the first time in an appeal will not be considered by this court."

Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004)

(internal quotation marks omitted).  We have explained that, if we were to address

issues that had not been raised before the district court, "we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." Id.  No party challenged in front of the magistrate judge the adequacy of the notice to the absent class members.  Because the parties did not give the magistrate judge an opportunity to consider the adequacy of the notice, we need not consider this argument.  Moreover, we will not allow an amicus curiae who asserts an argument on behalf of absent class members in a class action to attempt to "control the course of th[e] litigation to the extent of requesting individual relief not requested by anyone else." Bing v. Roadway Express, Inc., 485 F.2d 441, 452 (5th Cir. 1973).

The consumer advocates argue that we should address the due process argument because "[t]he failure of notice here concerns notice to the class members of their constitutional rights to an Article III judge, which appellees do not (and cannot) dispute presents a 'jurisdictional question' that should be raised sua sponte even when no one brings it to the court's attention," but we disagree. Whether the magistrate judge had jurisdiction to enter a final judgment under section 636(c) and Article III is a question of subject-matter jurisdiction.  But the adequacy of the notice is not a question of subject-matter jurisdiction that we must raise sua sponte.  The contents of the notice are relevant only to the question whether, if the consents of the absent class members are necessary, they impliedly

consented to the jurisdiction of the magistrate judge under the decision of the

Supreme Court in Roell v. Withrow, 538 U.S. 580, 123 S. Ct. 1696 (2003), which

held that the consent of a party may be inferred from conduct during litigation in

some circumstances, id. at 582, 123 S. Ct. at 1699.  The contents or sufficiency of

the notice are not relevant to any question about our subject-matter jurisdiction if

absent class members were not required to consent to litigate before the magistrate

judge.

The consumer advocates argue that, even if the argument about due process

is not related to the jurisdiction of the magistrate judge under Article III and

section 636(c), "the issue would still be jurisdictional," but this argument is based

on a misunderstanding of the distinction between personal and subject-matter

jurisdiction.  Our law is clear that "objections to personal jurisdiction—unlike

subject matter jurisdiction—are waivable."  Oldfield v. Pueblo de Bahia Lora,

S.A., 558 F.3d 1210, 1218 n.21 (11th Cir. 2009).  The consumer advocates cite the

decisions of the Supreme Court in Shutts, and Mullane v. Central Hanover Bank &

Trust Co., 339 U.S. 306, 70 S. Ct. 652 (1950), as support for the argument that the

sufficiency of the notice implicates a jurisdictional question that we must address,

but both of these decisions addressed personal jurisdiction, Shutts, 472 U.S. at 814,

105 S. Ct. at 2976; Mullane, 339 U.S. at 313, 70 S. Ct. at 656.  The Supreme Court

has explained that, "[b]ecause the requirement of personal jurisdiction represents

first of all an individual right, it can, like other such rights, be waived." Ins. Corp.

of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703, 102 S. Ct.

2099, 2105 (1982).  "[U]nlike subject-matter jurisdiction, which even an appellate

court may review sua sponte, . . . a defense of lack of jurisdiction over the person .

. . is waived if not timely raised in the answer or a responsive pleading."  Id. at

704, 102 S. Ct. at 2105 (internal quotation marks omitted).  We cannot address an

argument of an amicus curiae based on a personal right of the unnamed class

members that was not presented to the district court or in the brief of the appellant.

*B.  The Magistrate Judge Abused His Discretion When He Approved the Settlement Agreement.*

"In order to approve the settlement agreement, the district court was

required to determine that it was fair, adequate, reasonable, and not the

product of collusion."  Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n, 18

F.3d 1527, 1530 (11th Cir. 1994).  The magistrate judge recognized that we

have identified the following six factors that a court should consider to

decide whether a settlement agreement in a class action is fair:

> (1) the likelihood of success at trial; (2) the range of possible
> recovery; (3) the point on or below the range of possible recovery at
> which a settlement is fair, adequate and reasonable; (4) the
> complexity, expense and duration of litigation; (5) the substance and
> amount of opposition to the settlement; and (6) the stage of
> proceedings at which the settlement was achieved.

<u>Bennett v. Behring Corp.</u>, 737 F.2d 982, 986 (11th Cir. 1984).  The key factor in

this appeal is the third one: the range of possible recovery.

The magistrate judge approved a settlement that provided no monetary relief

to the absent class members because he found that the defendants were not

financially able to pay a meaningful award, but this finding is not supported by the

record.  The only evidence of the ability of the defendants to satisfy a judgment

that was introduced at the fairness hearing concerned a single defendant, Persels &

Associates.  The day of the fairness hearing, the legal service defendants filed an

affidavit in which Ruther averred that Persels & Associates had sustained nearly $6

million in losses during the calendar years of 2010 and 2011 and that Persels &

Associates had an outstanding debt of $14 million from a previous settlement

agreement.  But this declaration establishes only that one of seven defendants

would be unable to satisfy a significant judgment.  The declaration does not prove

that the other six defendants would be unable to satisfy a judgment or even address

the ability of those six defendants to satisfy a judgment.  There is no support in the

record for the finding of the magistrate judge that the defendants would be unable

to satisfy a judgment, and the magistrate judge abused his discretion when he made

that finding.

This erroneous finding that the defendants would be unable to satisfy a

substantial judgment was central to the decision of the magistrate judge that the

settlement agreement was fair, adequate, and reasonable.  The magistrate judge

stated that one of three factors that persuaded him to approve the settlement

agreement even though absent class members received no monetary relief was "the

financial inability of the defendants to pay a meaningful award."  And the

magistrate judge also relied on the finding that the defendants would be unable to

satisfy a judgment to find that "the range of possible recovery," Bennett, 737 F.2d

at 986, was "from zero to a minimal recovery," and to conclude that "the point on

or below the range of possible recovery at which a settlement is fair, adequate and

reasonable," id., "includes no monetary recovery by the Class members."

The magistrate judge abused his discretion when he approved the settlement

based on a clearly erroneous factual finding.  See Indigo Room, Inc. v. City of Fort

Myers, 710 F.3d 1294, 1299 (11th Cir. 2013).  Although a court does not abuse its

discretion when it makes a factual finding unless that finding was clearly

erroneous, see id., a court commits a clear error when it makes a factual finding

that has no support in the record, see United States v. Newman, 614 F.3d 1232,

1238–39 (11th Cir. 2010).

CareOne argues that the record supports the finding that the other defendants

would also be unable to satisfy a judgment, but we disagree.  CareOne argues that

it was unclear whether CareOne would remain a party to the litigation, the income

and assets of Ruther & Associates are irrelevant because that firm was the

predecessor of Persels & Associates, and the three individual defendants' assets were protected from levy or execution because all of the individual defendants were married and held all of their assets jointly.  But no one has argued or introduced any evidence to suggest that CareOne would be unable to satisfy a judgment.  Although CareOne stated that it would appeal the denial of its motion to compel arbitration, at this point only speculation supports a finding that CareOne was likely to prevail.  This speculation is not sufficient to support the exclusion of the assets of CareOne from "the range of possible recovery."  <u>Bennett</u>, 737 F.2d at 986.  And the record does not support a finding that the three individual defendants would be unable to satisfy a judgment.  Ruther averred that the three individual defendants could not satisfy a judgment because "all of [them] are married and [their] assets are held jointly with their spouses and are therefore protected from levy or execution," but this statement was only based on his "best . . . knowledge, understanding and belief."  The record contains no information about the financial condition of these three defendants other than the speculation of the managing partner of Persels & Associates.  And even if we accepted CareOne's argument as to all of these defendants, CareOne excludes one defendant: Legal Advice Line. Nothing in the record supports a finding that Legal Advice Line would be unable to satisfy a judgment.

Day argues that the magistrate judge did not abuse his discretion when he failed to consider whether defendants other than Persels & Associates would be able to satisfy a judgment "because all of the parties recognized that Persels & Associates would be primarily liable for any judgment under the amended complaint," but we disagree.  The imposition of primary liability on Persels & Associates would not prevent the imposition of secondary liability on the other defendants.  Black's Law Dictionary defines secondary liability as "[l]iability that does not arise unless the primarily liable party fails to honor its obligation."  Black's Law Dictionary 998 (9th ed. 2009).  To be sure, Florida law provides that "[i]n a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault."  Fla. Stat. § 768.81(3).  But Florida law would not have governed the claims of most of the nationwide class, and the amended complaint also included federal claims.  The assets and income of the other defendants could still be used to satisfy a judgment because the defendants would be secondarily liable.  See Weingart v. Allen & O'Hara, Inc., 654 F.2d 1096, 1106 (5th Cir. 1981).

## IV.  CONCLUSION

We **VACATE** the final judgment that approved the settlement agreement and **REMAND** for further proceedings.

PRO, District Judge, dissenting in part and concurring in part:

I concur in the judgment remanding this case to the district court, and I agree the magistrate judge abused his discretion when he approved the Settlement Agreement as fair, reasonable, and adequate as required by Federal Rule of Civil Procedure 23(e)(2).  I write separately, however, because I would hold that unnamed class members become "parties" upon class certification whose consent is required under 28 U.S.C. § 636(c)(1) for a magistrate judge to exercise jurisdiction.  As a result, I would hold this Court likewise lacks jurisdiction under § 636(c)(1).  Accordingly, I would vacate for lack of jurisdiction the magistrate judge's Order approving the class action settlement and remand for further proceedings.

## I.

Among the most important requirements in federal class actions are that the unnamed class members bound by the judgment must be properly noticed and certified by a court of competent jurisdiction, and that any settlement be properly approved by the court as "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)-(2).  In this case, we are asked to decide whether the magistrate judge, acting pursuant to consent jurisdiction under § 636(c)(1), properly approved a class action settlement agreement as fair, adequate, and reasonable.  However, because our jurisdiction to review this case is dependent on the magistrate judge's jurisdiction,

before we can consider whether the magistrate judge properly approved the class

action settlement in this case, we must be satisfied that the magistrate judge had

jurisdiction under § 636(c)(1) to approve the settlement.

Under § 636(c)(1), a magistrate judge may exercise jurisdiction over a case

in which a district court has jurisdiction "[u]pon the consent of the parties" and

upon special designation by the district court.  In this class action, named plaintiff

Miranda Day ("Day") brought suit on behalf of herself and a putative class of

10,000 Florida consumers who had contracted for debt settlement services with

Defendants/Appellees Ruther & Associates, Persels & Associates, Neil J. Ruther,

Jimmy B. Persels, Robyn R. Freedman (collectively, the "Law Firm Defendants"),

CareOne Services In., f/k/a FreedomPoint, Inc. ("CareOne"), and other defendants

including Ascend One Corp., 3C Inc., and Bernaldo Dancel.  The district court had

jurisdiction over the case pursuant to the Class Action Fairness Act of 2005, 28

U.S.C. § 1332(d), as well as federal question jurisdiction under 28 U.S.C. § 1331.

Before class certification, named plaintiff Day and all defendants filed a

Notice, Consent, and Reference of Civil Action to a Magistrate Judge pursuant to

28 U.S.C. § 636(c)(1) in which they consented to have a United States magistrate

judge "conduct all proceedings in this case including trial, the entry of final

judgment, and all post-trial proceedings."  Plaintiff's counsel signed the consent

form on behalf of "Miranda L. Day" only, with no indication Day claimed

authority to act on behalf of a putative class.  The district judge approved the

consent form and submitted the case to the magistrate judge.

Day subsequently filed an Amended Class Action Complaint on behalf of

herself and 10,000 Florida consumers alleging a scheme similar to that in her

original Complaint.  Day asserted claims against the Law Firm Defendants,

CareOne, and Legal Advice Line, LLC ("Legal Advice Line"), which was added as

a new defendant, for violations of the Credit Repair Organizations Act and various

common law claims.

Approximately three weeks after the Amended Class Action Complaint was

filed, Day and the defendants notified the magistrate judge they had "reached an

agreement in principle regarding the settlement of this case."  Day subsequently

filed a Motion for Preliminary Approval of the Settlement Agreement.  Although

Day brought the Amended Class Action Complaint on behalf of a putative class of

10,000 Florida consumers, the proposed Settlement Agreement sought certification

of a nationwide class including 125,011 consumers who contracted with Ruther &

Associates and Persels & Associates for debt settlement services on or after April

28, 2005.  Day did not amend the Amended Class Action Complaint to allege it

was being brought on behalf of a nationwide class of 125,011 consumers.

The magistrate judge granted preliminary approval of the proposed

Settlement Agreement, conditionally certified the class of 125,011 consumers,

appointed Day's counsel as class counsel, approved the proposed Notice to class, and set the fairness hearing.  Pursuant to the approved notice plan, the settlement administrator sent the Notice to the 125,011 class members.  The settlement administrator also sent the Notice to the Attorney General of the United States and the Attorney General of every state and territory except Washington, where a separate statewide class action already was pending.  The Notice advised class members they could opt out of the class, so they would not be bound by the terms of the proposed Settlement Agreement and would not be precluded from filing or prosecuting any claims they may have on their own behalf.  The Notice also advised class members of the procedure for objecting to the proposed Settlement Agreement.

The Notice did not explain that plaintiffs' class representative Day and the defendants had consented to the magistrate judge's jurisdiction under § 636(c)(1).  The only reference to the magistrate judge was on page six of the seven-page Notice, where it stated "[t]he final approval hearing will be . . . before Magistrate Judge Thomas G. Wilson, U.S. District Court for the Middle District of Florida."  Otherwise, the Notice repeatedly referred to "the Court," except on the final page where it admonished class members in boldface, capitalized type not to telephone "the judge's chambers concerning this notice or this case."

45

Five class members, including Appellant Raymond Gunn ("Gunn"), filed objections to the proposed Settlement Agreement.  In his Objection, Gunn argued the proposed Settlement Agreement was not fair, reasonable, and adequate as required by Rule 23(e)(2) for a variety of reasons.  The Attorneys General of Connecticut, Florida, Maine, New York, and West Virginia also submitted an objection letter urging the magistrate judge to reject the proposed Settlement Agreement on the basis it was not fair, reasonable, and adequate, primarily because of the lack of monetary relief to the class members.  In their objection, the Attorneys General noted they were speaking on behalf of over 17,000 class members who are residents of their respective states.

After a fairness hearing, the magistrate judge granted final approval of the Settlement Agreement.  Gunn now appeals the magistrate judge's Order granting final approval of the Settlement Agreement, arguing the settlement was not fair, adequate, and reasonable.  Two amicus briefs were filed in support of Gunn, one by the National Association of Consumer Advocates ("NACA") and the other by the States of New York, Arkansas, Florida, Hawaii, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Tennessee, Vermont, Washington, West Virginia, and the District of Columbia.  Like Gunn, the twenty-five Amicus States and the District of Columbia

argue the Settlement Agreement was not fair, adequate, and reasonable.  For the first time on appeal, NACA raises a new issue regarding whether the magistrate judge had constitutional authority to approve the class action settlement.

## II.

### A.

In its amicus brief, NACA argues the magistrate judge lacked constitutional authority to approve the Settlement Agreement because the unnamed class members did not consent to the magistrate judge's exercise of jurisdiction.  NACA further argues § 636(c) is unconstitutional as applied to this case because the unnamed class members did not receive constitutionally adequate notice that the named parties had consented to a magistrate judge.  Finally, NACA argues § 636(c) is facially unconstitutional because it allows magistrate judges to exercise powers reserved to Article III judges under the Constitution.  The question of whether the magistrate judge had jurisdiction to approve the Settlement Agreement was not raised by Day, the defendants, or any objector either below or on appeal.

Generally, the Court will not consider issues raised in an amicus brief "that were neither raised in the district court nor argued by appellants on appeal." Richardson v. Ala. State Bd. of Educ., 935 F.2d 1240, 1247 (11th Cir. 1991). However, "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under

review," regardless of whether the parties raise the issue.  <u>King v. Cessna Aircraft Co.</u>, 505 F.3d 1160, 1170 (11th Cir. 2007) (quotation omitted).

The Court's jurisdiction to review a final judgment entered by a magistrate judge arises from 28 U.S.C. § 636(c)(3).  <u>McNab v. J & J Marine, Inc.</u>, 240 F.3d 1326, 1327-28 (11th Cir. 2001) (per curiam); 28 U.S.C. § 1291; 28 U.S.C. § 636(c)(3) (providing that when the parties properly consent to a magistrate judge, the parties may "appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge").  A magistrate judge may exercise jurisdiction and enter final judgment under § 636(c)(1) "[u]pon the consent of the parties" and upon special designation by the district court having jurisdiction over the case.  Failure of the parties to consent to the magistrate judge's exercise of jurisdiction deprives this Court of jurisdiction over an appeal from a final judgment entered by a magistrate judge.  <u>McNab</u>, 240 F.3d at 1328.

The Court always has jurisdiction to determine its own jurisdiction and that of the lower court in cases it reviews, and "whether the parties consented to the magistrate judge's jurisdiction to enter final judgment" pursuant to § 636(c) is a jurisdictional question to be considered sua sponte.  <u>McNab</u>, 240 F.3d at 1328; <u>Kirkland v. Midland Mortg. Co.</u>, 243 F.3d 1277, 1279-80 (11th Cir. 2001).  Here, if the magistrate judge lacked jurisdiction because the unnamed class members are "parties" who did not consent under § 636(c)(1), then this Court would lack

jurisdiction under § 636(c)(3).  Consequently, the Court must determine whether

the magistrate judge had jurisdiction under § 636(c)(1) even though Appellant

Gunn did not raise this issue in his objection below or on appeal.

Consent to a magistrate judge's jurisdiction under § 636(c)(1) must be

"explicit, voluntary, clear, and unambiguous."  McNab, 240 F.3d at 1328.

However, such consent "can be inferred from a party's conduct during litigation."

Roell v. Withrow, 538 U.S. 580, 582 (2003).  For example, a party impliedly

consents when "the litigant or counsel was made aware of the need for consent and

the right to refuse it, and still voluntarily appeared to try the case before the

Magistrate Judge."  Id. at 590; see also Chambless v. Louisiana-Pac. Corp., 481

F.3d 1345, 1350 (11th Cir. 2007).

"[P]arties added to a case after the original litigants have filed a consent

under § 636(c) must also agree to the submission of the case to the magistrate

judge; if they do not, then the case must be returned to a district judge."  Williams

v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 268-69 (7th Cir. 1998); see

also N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., 996 F.2d 21, 24-25 (2d

Cir. 1993) (requiring intervenors' express consent to the magistrate judge's

jurisdiction); Caprera v. Jacobs, 790 F.2d 442, 444-45 (5th Cir. 1986) (per curiam)

(holding that a magistrate judge did not have jurisdiction to enter the order of

dismissal because later-added defendants did not expressly consent to the

magistrate judge's jurisdiction); <u>In re Litig. Relating to the Riot of Sept. 22, 1991</u>

<u>at the Maximum Sec. Unit of the Mont. State Prison</u>, No. 94-35710, 1996 WL

205487, at *2 (9th Cir. Apr. 26, 1996) (unpublished) ("Once the additional

defendants were added to the action but did not expressly consent to the magistrate

judge's jurisdiction, the magistrate judge lacked jurisdiction over the entire

action."). Thus, if upon class certification unnamed class members become

"parties" under § 636(c), then their consent is required for the magistrate judge's

jurisdiction over the case.

Congress did not define the term "parties" for § 636(c)(1) purposes. When

Congress leaves a term in a statute undefined, "we must give it its ordinary

meaning, keeping in mind the context of the statute." <u>United States v. Jimenez</u>,

705 F.3d 1305, 1308 (11th Cir. 2013) (quotation omitted). "We assume that

Congress used the words in a statute as they are commonly and ordinarily

understood, and if the statutory language is clear, no further inquiry is

appropriate." <u>Fed. Reserve Bank of Atlanta v. Thomas</u>, 220 F.3d 1235, 1239 (11th

Cir. 2000). If the statutory language is ambiguous, the Court may examine

extrinsic materials and employ canons of construction to determine Congress's

intent. <u>Garcia v. Vanguard Car Rental USA, Inc.</u>, 540 F.3d 1242, 1246-47 (11th

Cir. 2008) (canons of construction); <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d

1161, 1167 (11th Cir. 2003) (extrinsic materials).

The term "parties" in § 636(c)(1) is ambiguous because it is not clear whether unnamed class members are included in that term once a class is certified. I therefore turn to extrinsic sources and canons of construction to determine whether, upon certification, unnamed class members become "parties" whose consent is required for a magistrate judge to exercise jurisdiction under § 636(c)(1).

Congress added the relevant language of § 636(c)(1) in 1979.  See Act of Oct. 10, 1979, Pub. L. No. 96–82, § 2, 93 Stat. 643 (1979).  Looking to extrinsic sources of what Congress may have understood "parties" to mean in 1979, the fifth edition of Black's Law Dictionary, published the same year, explained that "[a] 'party' to an action is a person whose name is designated on record as plaintiff or defendant."  Black's Law Dictionary 1010 (5th ed. 1979).  Black's Law Dictionary also states that the term party "[i]n general, means one having right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from judgment," and that party "refers to those by or against whom a legal suit is brought."  Id.  Although a class action is brought and controlled by the named class representatives, unnamed class members are "those by or against whom legal suit is brought" once a class is certified.  Thus, unnamed class members arguably would fall within Black's Law Dictionary's definition of "parties."  The Restatement (First) of Judgments, however, explained that "[a]

51

class action is an illustration of a situation where it is not feasible for all persons

whose interests may be affected by an action to be made parties to it," and that the

named plaintiff must "purport to act on behalf of all," suggesting that unnamed

class members are not "parties."  Restatement (First) of Judgments § 86, cmt. b

(1942).

Although secondary sources such as dictionaries and Restatements provide

some guidance, given the rule of statutory construction that Congress is presumed

to know the law, including judicial interpretations of that law, when it legislates,

pre-1979 cases are stronger indicia of whom or what Congress may have

considered to be a "party" in 1979.  See Cannon v. Univ. of Chicago, 441 U.S.

677, 696-98 (1979).  In 1974 – five years before Congress added the relevant

language to § 636(c)(1) – the Supreme Court held that unnamed class members are

"parties" in the sense that filing a lawsuit on behalf of the class tolls the statute of

limitations for their claims.  Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 550-51

(1974) (stating that unnamed class members "stood as parties to the suit" for

tolling purposes unless and until they opted out); cf. In re Cement Antitrust Litig.,

688 F.2d 1297, 1310 (9th Cir. 1982) (holding that unnamed class members are

included in the term "party" under 28 U.S.C. § 455, a judicial recusal statute

amended by Congress in 1974).

Moreover, before the enactment of § 636(c)(1), two circuits and several

district courts concluded that unnamed class members may be subject to the

"party" discovery rules of the Federal Rules of Civil Procedure.  See, e.g., Dellums

v. Powell, 566 F.2d 167, 187 (D.C. Cir. 1977) (stating "[w]hile it is true that

discovery against absentee class members under Rules 33 and 34 cannot be had as

a matter of course, the overwhelming majority of courts which have considered the

scope of discovery against absentees have concluded that such discovery is

available" under certain circumstances and listing cases); Brennan v. Midwestern

United Life Ins. Co., 450 F.2d 999, 1004-05 (7th Cir. 1971) (holding unnamed

class members are "parties" subject to the "'party' discovery procedures provided

by Rules 33 and 34," although it should not be routine to subject unnamed class

members to discovery).  But see Wainwright v. Kraftco Corp., 54 F.R.D. 532, 533-

34 (N.D. Ga. 1972) (holding that party discovery rules did not apply to unnamed

class members); Fischer v. Wolfinbarger, 55 F.R.D. 129, 132 (N.D. Ky. 1971)

(same).  Although discovery on unnamed class members is circumscribed, it is not

because they are not "parties."  It is because unnamed class members normally

"[have] no duty to actually engage in the prosecution of the action," and because

discovery on unnamed class members may be misused "as a tactic to take undue

advantage of the class members or as a stratagem to reduce the number of

claimants."  Brennan, 450 F.2d at 1005.  Allowing unfettered discovery of

unnamed class members also may undermine the efficiency goals of class action litigation.  If unnamed class members are not "parties," it is unclear why courts would apply Rules 33 and 34 when parties seek to propound discovery on unnamed class members as opposed to applying non-party discovery rules.  The Seventh Circuit in <u>Brennan</u> specifically rejected the argument that "absent class members are not 'parties' to a suit and consequently not subject to the 'party' discovery procedures provided by Rules 33 and 34." <u>Id.</u> at 1004-05.

Following the enactment of § 636(c)(1) in 1979, case law building on <u>American Pipe</u> also recognizes that unnamed class members "may be parties for some purposes and not for others.  The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." <u>Devlin v. Scardelletti</u>, 536 U.S. 1, 9-10 (2002).  For instance, unnamed class members are "parties" in the sense that filing an action on behalf of the class tolls statutes of limitations against the class and that unnamed class members who have objected to approval of a class action settlement may appeal without intervening, but unnamed class members are not "parties" for the purpose of diversity jurisdiction.  <u>Id.</u> at 10, 14 (citing <u>Am. Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538 (1974)).  In <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 810 (1985), the Supreme Court also indicated that unnamed class members may be "parties" in some circumstances because it states that they "are almost never

subject to counterclaims or cross-claims, or liability for fees or costs." If unnamed class members are not "parties," it is unclear how they ever could be subject to counterclaims, cross-claims, or liability for fees or costs. See also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983) (stating that a putative unnamed class member "clearly would have been a party in Pendleton if that suit had been permitted to continue as a class action"). Thus, Devlin, Shutts, and Crown are consistent with American Pipe and other pre-1979 case law holding that unnamed class members can be "parties" in some circumstances.

Given the pre-1979 authority finding that unnamed class members may be "parties" in various circumstances, Congress presumably was aware that the term "parties" could include unnamed class members if left open to judicial interpretation. Congress could have explicitly excluded unnamed class members if that was its intent, but it did not do so.

It is "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." Gomez v. United States, 490 U.S. 858, 864 (1989); see also Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (stating "[i]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be

55

avoided." (quotations omitted)).  If unnamed class members are not "parties" with

a right to consent individually under § 636(c)(1) after certification, then they would

be bound by the named plaintiff's relinquishment of their rights to an Article III

judge, which raises constitutional concerns regarding whether a magistrate judge

properly may exercise jurisdiction under § 636(c)(1) without the consent of the

unnamed class members.  Construing the statute to find that unnamed class

members are "parties" is a reasonable alternative interpretation in light of the pre-

1979 case law, and avoids a constitutional question.

Additionally, courts construe statutory grants of power strictly.  See

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988); Healy v.

Ratta, 292 U.S. 263, 269-70 (1934).  Given the Article III concerns present here,

strict construction is particularly appropriate.  In this context, the magistrate judge

is acting in essence as an Article III judge under § 636(c), not as a magistrate judge

making non-dispositive rulings or a report and recommendation concerning a

dispositive matter under § 636(b).  As discussed above, whether the parties have

properly consented to a magistrate judge is a jurisdictional issue because the

parties' consent is required to trigger a magistrate judge's jurisdiction to finally

adjudicate a civil case in accord with § 636(c).  Indeed, "[t]he unanimous and

voluntary consent of the parties is the constitutional linchpin of this power."

Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 268 (7th Cir. 1998)

(quotation omitted).  Also, it is through consent that magistrate judges derive their statutory authority under § 636(c)(1) to dispositively adjudicate unnamed class members' claims.  See N.Y. Chinese TV Programs, 996 F.2d at 24 (stating that "the consent of each party is essential to the validity of the statutory system that allows a magistrate judge to make binding adjudications").  I therefore would hold that upon certification, unnamed class members become "parties" who must consent to a magistrate judge's jurisdiction under § 636(c)(1).

This construction does not preclude a district judge from referring matters to a magistrate judge in class actions in accord with § 636(b)(1)(A)-(B).[1]  Construing the term "parties" to include unnamed class members may make it somewhat burdensome for the court to mail a copy of proposed findings of fact and recommendations under § 636(b)(1)(B) "to all parties" as required by § 636(b)(1)(C).  See Barber v. Thomas, 130 S. Ct. 2499, 2506 (2010) (stating there is a "presumption that a given term is used to mean the same thing throughout a

---

[1]  Section 636(b)(1)(A) provides "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

Section 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in [§ 636(b)(1)(A)], of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."

statute") (quotation omitted).  However, the impact on the utilization of magistrate judges will be minimal.

First, it still may be practicable for the clerk's office to notify unnamed class members in small class actions.  Second, it is unclear whether the burden of notifying the unnamed class members of a report and recommendation is great enough to find Congress did not intend for unnamed class members to be "parties." The requirement that the court notify all unnamed class members does not apply to non-dispositive pretrial matters decided by the magistrate judge under § 636(b)(1)(A).  Rather, it applies only to reports and recommendations under § 636(b)(1)(B), which generally are case dispositive matters customarily committed to an Article III district judge.[2]

Finally, even if construing "parties" to include unnamed class members would result in some large class actions not being referred to magistrate judges under § 636(c), the impact on the overall utilization of magistrate judges would be minimal.  Statistics published annually by the Administrative Office of the United States Courts show that for the twelve month period ending September 30, 2012, magistrate judges disposed of 1,068,153 matters, including 264,981 matters in civil

---

[2]  Sections 636(c)(1)-(2) would not require notice to unnamed class members until a class is certified, at which point unnamed class members would receive notice under Federal Rule of Civil Procedure 23(c)(2).  Thus, including unnamed class members in the term "party" would not result in a greater burden on the courts under §§ 636(c)(1)-(2).

cases.[3]  During that period, magistrate judges concluded with finality 15,049 civil

cases pursuant to consent jurisdiction, including 360 civil jury trials and 139 civil

nonjury trials.  It is not reported how many class actions were included in the total

number of civil cases concluded by magistrate judges on consent of the parties

under § 636(c), but given the relatively small number of class actions comprising

the civil caseload of the United States District Courts overall, the number

presumably is small.

To the extent this construction of "parties" burdens the court and the manner

in which magistrate judges are utilized with respect to class action cases, any such

burden must be weighed against the constitutional and statutory limits of

magistrate judges' power to dispositively adjudicate unnamed class members'

claims.  Due to the prerequisite Congress imposed to permit magistrate judges to

act as Article III judges only with the parties' consent under § 636(c), large class

actions may not be among the types of cases which realistically may proceed

before a magistrate judge under § 636(c).

The Supreme Court has indicated that the decision whether unnamed class

members are "parties" should be made in reference to the goals of class action

litigation.  See Devlin, 536 U.S. at 10.  But having a magistrate judge finally

adjudicate class actions is not a goal of class action litigation.  To the extent

---

[3]  U.S. Magistrate Judges, http://www.uscourts.gov/Statistics/JudicialBusiness/2012/us-magistrate-judges.aspx (last visited September 4, 2013).

magistrate judges' resolution of class actions promotes efficiency, efficiency is not

the only goal of class action litigation, particularly in light of the unnamed class

members' right to have their claims adjudicated by an Article III decision maker as

well as the court's fiduciary responsibility to unnamed class members.  See

Holmes v. Cont'l Can Co., 706 F.2d 1144, 1147 (11th Cir. 1983) ("[C]areful

scrutiny by the court is necessary to guard against settlements that may benefit the

class representatives or their attorneys at the expense of absent class members."

(quotation omitted)); Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d

646, 652-53 (7th Cir. 2006) (stating the district court's role in reviewing a

settlement agreement is "akin to the high duty of care that the law requires of

fiduciaries." (quotation omitted)).  When considering the scope of magistrate

judges' power under § 636(c), practical efficiency concerns are less important than

constitutional and statutory considerations.

    Moreover, what was "most important" to Devlin's holding that unnamed

class members are "parties" for the purposes of appeal was that, without the right

to appeal approval of a class action settlement, unnamed class members would be

bound by a settlement to which they did not agree.  536 U.S. at 10-11.  Here,

without the right to individually consent to a magistrate judge under § 636(c),

125,011 unnamed class members would be bound by Day's relinquishment of their

rights to an Article III judge which they did not know about, much less expressly

60

or impliedly consent to.  This is particularly troubling because the Notice the

unnamed class members received did not explain that Day and the defendants had

consented to the magistrate judge's jurisdiction under § 636(c)(1), and the only

mention of the magistrate judge was buried on page six of the seven-page Notice.

Additionally, unnamed class members would be bound by a final adjudication of

their claims by a magistrate judge without their consent.[4]

In holding that unnamed class members are "parties" upon certification who

must consent to a magistrate judge's jurisdiction under § 636(c), I would depart

from the Third and Seventh Circuits.  Both have held that "unnamed class

members are not 'parties' within the meaning of § 636(c)(1), and that their consent

is not required for the magistrate judge to exercise jurisdiction over a case."

Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir. 2012); see

also Williams, 159 F.3d at 269-70.  The Third and Seventh Circuits reasoned that

the unnamed class members' consent is not necessary under § 636(c) because

"[g]enerally speaking, absent class members are not 'parties' before the court in

the sense of being able to direct the litigation."  Williams, 159 F.3d at 269.  Rather,

the named plaintiff "is the 'party' to the lawsuit who acts on behalf of the entire

---

[4] This would include class members who were never identified as putative class members
in any operative complaint in this case.  Day brought the Amended Class Action Complaint on
behalf of a putative class of 10,000 Florida consumers, and Day never amended her Amended
Class Action Complaint to include the nationwide class.  Yet her pre-certification consent would
bind 115,000 consumers who technically were not even part of the putative class identified in the
original or the Amended Class Action Complaint.

class, including with regard to the decision to proceed before a magistrate judge. This is an inherent part of representational litigation." Id.

The holding in Dewey and Williams that unnamed class members are not "parties" whose consent is necessary for a magistrate judge to exercise jurisdiction is at odds with Williams's acknowledgement that consent is the constitutional "linchpin" of the magistrate judge's authority under § 636(c)(1).  159 F.3d at 268. As discussed above, magistrate judges derive both statutory and constitutional authority to adjudicate later-added parties' claims only through consent.  Thus, a class representative's pre-certification consent to a magistrate judge that purports to bind the unnamed class members upon certification has greater import than a tactical litigation decision that is an "inherent part of representational litigation." Id. at 269.  Instead, consent is the constitutional and statutory source of the magistrate judge's power to in essence sit as an Article III judge and dispositively adjudicate the unnamed class members' claims.

Moreover, the options set forth in Williams and Shutts for unnamed class members to avoid being bound by a named class representative's pre-certification consent to a magistrate judge are not realistic alternatives.  The Seventh Circuit suggested that if unnamed class members prefer an Article III judge, they may move to intervene under Federal Rule of Civil Procedure 24(a) to "become a party to the lawsuit, and then exercise her right to withhold her consent to proceed before

the magistrate." Williams, 159 F.3d at 269.  The Seventh Circuit alternatively

suggested that "after the entry of final judgment, the unnamed class member can

raise a collateral attack based on due process against the named representative's

decision to consent under § 636(c)." Id.  Another option from Shutts is that an

unnamed class member may opt out of the settlement and not be bound by the

judgment entered by a non-Article III judge.  See Shutts, 472 U.S. at 812.

However, these three options are illusory if the unnamed class members are not

aware of their right to an Article III judge.  For instance, in this case, it is unclear

how the unnamed class members intelligently could have exercised their right to

opt-out because the Notice did not inform them of their right to an Article III

judge, that Day had purported to relinquish that right, and that class members could

exercise any of the three options if they wished to preserve their right to an Article

III judge.

    At the time the Seventh Circuit authored Williams, it did not have the

benefit of two recent United States Supreme Court cases, Standard Fire Insurance

Company v. Knowles, 133 S. Ct. 1345 (2013), and Smith v. Bayer Corporation,

131 S. Ct. 2368 (2011).  In Standard Fire, the Supreme Court held that a pre-

certification stipulation regarding the amount of damages the class would seek did

not bind members of the proposed class.  133 S. Ct. at 1348-49.  "That is because a

plaintiff who files a proposed class action cannot legally bind members of the

proposed class before the class is certified." Id. at 1349.  In Smith, the Supreme

Court held that when a party seeks class certification but fails to obtain it, an

unnamed class member from the proposed class is not precluded from seeking to

certify the class in another case, as "[n]either a proposed class action nor a rejected

class action may bind nonparties."  131 S. Ct. at 2379-80.  Although Smith

predates Dewey, the Third Circuit does not cite Smith, so it is unclear whether the

Dewey Court took Smith's holding into account when it held that unnamed class

members' consent is not required for the magistrate judge to exercise jurisdiction.

Regardless, neither the Third Circuit nor the Seventh Circuit had the guidance of

Standard Fire.[5]

Under Standard Fire and Smith, some pre-certification decisions by named

class representatives cannot bind putative unnamed class members.  Given that

magistrate judges derive both constitutional and statutory authority to adjudicate

later-added parties' claims only through consent, consent under § 636(c) is not the

type of pre-certification litigation decision named class representatives may make

that would bind unnamed class members upon certification.  Rather, upon

---

[5] The Seventh Circuit's holding in Williams has been further eroded by Devlin because Devlin's holding overruled one of the cases on which Williams relies.  In reasoning that "absent class members are not 'parties' before the court in the sense of being able to direct the litigation," Williams cites In re Brand Name Prescription Drugs Antitrust Litigation, 115 F.3d 458, 458 (7th Cir. 1997), in which the Seventh Circuit held that unnamed class members do not have a right to appeal absent intervention.  Williams, 159 F.3d at 269.  Because Devlin holds that unnamed class members who object to the proposed settlement are parties for the purpose of an appeal without having to intervene, Devlin overrules In re Brand Name Prescription Drugs Antitrust Litigation.

certification, unnamed class members become later-added "parties" whose consent is required to allow the magistrate judge to exercise jurisdiction over the dispositive resolution of the case.

The Seventh Circuit expressed the concern that treating unnamed class members as "parties" whose consent is required "would virtually eliminate § 636(c) referrals to magistrate judges in all potential class actions, because it would de facto transform all such cases into 'opt-in' style actions and fundamentally change the capacity of the judgment . . . to bind both sides in the absence of express consents." Williams, 159 F.3d at 269.  I disagree the impact would be so extreme.  The practical effect would be that the district judge will decide class actions unless the parties consent as required by applicable law to give the magistrate judge jurisdiction.  And, as previously discussed, holding that unnamed class members become "parties" under § 636(c)(1) upon certification has minimal impact on the utilization of magistrate judges.  Rather than doing violence to the utilization of magistrate judges, requiring adequate notice and the parties' express or implied consent to a magistrate judge's jurisdiction ensures proper adherence to the legal requirements Congress imposed on non-Article III magistrate judges, thereby preserving the legitimacy of the magistrate judge system and protecting litigants' rights and the integrity of the federal courts.

**B.**

Here, Day did not have the authority to consent to a magistrate judge on behalf of the unnamed class members before class certification.  Following conditional class certification, Day consented to the magistrate judge on her own behalf through her litigation conduct by voluntarily appearing before the magistrate judge at the fairness hearing.  See Roell, 538 U.S. at 590.  Of the 125,011 class members, Day was the only non-objecting class member to appear personally or through counsel.  However, Day's post-certification implied consent to the magistrate judge did not bind the unnamed class members because, upon certification, unnamed class members become later-added "parties" whose consent is required under § 636(c)(1).

The unnamed class members did not independently satisfy § 636(c)(1)'s consent requirement.  The unnamed class members did not expressly consent to the magistrate judge's jurisdiction.  The unnamed class members also did not impliedly consent to the magistrate judge's jurisdiction through their litigation conduct, i.e., by not objecting to the magistrate judge's jurisdiction.  The Notice did not explain that Day and the defendants had consented to a magistrate judge to preside over the proceedings, and the only reference to "magistrate judge" was on the second-to-last page of the Notice, where it stated "[t]he final approval hearing will be . . . before Magistrate Judge Thomas G. Wilson."  Otherwise, the Notice

repeatedly referred to "the Court," except on the final page where it admonished

class members not to telephone the judge's chambers concerning the Notice.  The

unnamed class members' failure to object to the magistrate judge's jurisdiction in

the face of the Notice provided is not sufficient to constitute implied consent

through litigation conduct.  See Roell, 538 U.S. at 590 (stating that a party

impliedly consents to a magistrate judge when "the litigant or counsel was made

aware of the need for consent and the right to refuse it, and still voluntarily

appeared to try the case before the Magistrate Judge").  Because the unnamed class

members are later-added parties whose consent was required, and because the

unnamed class members did not consent, the magistrate judge lacked jurisdiction

to approve the class action settlement in this case.

## III.

I would hold that the unnamed class members became "parties" upon

certification whose express or implied consent was required under § 636(c)(1).  I

further would hold the magistrate judge lacked authority to approve the class

action settlement because Day's post-certification implied consent to the

magistrate judge operated only on her own behalf, and the unnamed class members

did not satisfy § 636(c)(1)'s consent requirement.  Because the requirements of

§ 636(c)(1) were not satisfied, this Court likewise lacks appellate jurisdiction under

§ 636(c)(3).  I concur in the judgment vacating and remanding for further

proceedings.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

### ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley                                          For rules and forms visit
Clerk of Court                                    www.ca11.uscourts.gov

September 10, 2013

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 12-11887-BB
Case Style: Miranda Day v. Persels & Associates, LLC, et al
District Court Docket No: 8:10-cv-02463-TGW

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellees.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs